CITY OF HOUSTON, Appellant,

v.

Chauncey RIGGINS, Appellee.

No. 1138.

Court of Civil Appeals of Texas,
Tyler.

June 15, 1978.

Roy F. Martin, III, Asst. City Atty., Houston, for appellant.

Rod V. Steinburg, Michael Y. Saunders, Helm, Pletcher, Hogan & Burrow, Ray Putney, Houston, for appellee.

McKAY, Justice.

Appellee Chauncey Riggins brought suit against the City of Houston (City) for damages for personal injuries received when the boat in which appellee was riding went over the spillway at the dam on Lake Houston. Trial was before a jury, and the trial court, based upon the verdict, rendered judgment for appellee for $36,850.00 plus stipulated medical expenses of $1,956.00, the total judgment being for $38,806.00. The City brings this appeal on several points.

The pleadings of appellee allege that the City was negligent (1) in failing to provide a barricade or sufficient warning signs or lights or other instruments around the dam to warn of dangerous conditions created by the high level of water in the lake, and (2) in failing to warn persons in boats which the City could reasonably foresee would be transversing the property of the dangerous conditions. The City answered by general denial, and further alleged that any injuries to appellee were caused by his own acts of negligence, each of which was a proximate cause of the accident and any injuries. It was further alleged by the City that conditions on Lake Houston were open and obvious, that appellee had actual and full knowledge of the dangers of boating on said lake, or that he was charged by law with such knowledge, and that the City owed appellee no further duty to warn of danger, and consequently breached no legal duty to appellee, and that appellee volun-

tarily exposed himself to such danger and voluntarily assumed all the risks. Alternatively, the City plead unavoidable accident.

The City alleged by trial amendment that appellee failed to comply with its charter notice provisions, but the trial court denied the City's motion for leave to file.

The City's points one and two complain that the trial court erred in admitting testimony relating to other dams because such evidence was irrelevant and shifted the burden of proof. Appellee's witness Keithley was permitted to testify over City's objection about markings or buoys or other warning devices at spillways on other lakes at other times. The City objected that the markings or construction or the existence or anything about any of the other spillways or other lakes was irrelevant to the conditions which existed on April 25, 1973, at Lake Houston. The trial court overruled the City's objections. Thereafter appellee introduced testimony from other witnesses to the same effect as that of Keithley, without objection by the City; and City cross-examined all of these witnesses about conditions at other lakes. If the trial court erred in admitting Keithley's testimony, City's objection to it was waived for failure to object to similar evidence later introduced by appellee. An objection to evidence is waived by permitting other witnesses to testify without objection to the evidence complained of. *San Antonio & A. P. Ry. Co. v. Lester*, 84 S.W. 401 (Tex.Civ.App.1904, rev'd on other grounds, 99 Tex. 214, 89 S.W. 752); *Howell v. Bowden*, 368 S.W.2d 842 (Tex.Civ.App.-Dallas 1963, writ ref'd n. r. e.); 23 Tex.Jur.2d, Evidence, sec. 208, p. 320. Points one and two are overruled.

By points three and four, City maintains the trial court erred in rendering judgment for appellee because there was no evidence, or insufficient evidence, to support the jury's answer to special issue one. We overrule these points.

Special issue one inquired: "Do you find from a preponderance of the evidence that there was any negligence on the part of the City of Houston on the occasion in question

which was a proximate cause of the occurrence in question?" The jury answered: "We do."

The witness William Keithley called by appellee, testified that in 1963 there was a "restricted area" sign near the spillway on Lake Houston, but no signs reading "danger." He said he found the buoys gone, expanses where there were no buoys or rope—"nothing to indicate that there was any reason to not go down there," and that that condition existed through 1973. He further testified that when the buoys were there, they were small (approximately five to six inches around and approximately two feet tall), and approximately 100 yards apart, and that there was a small rope between the buoys "but it wouldn't really prevent you from going through there"; that sometimes the rope would be above the water and at other times it would be on or under water; and that as you go toward the area of the spillway, before you get to it, you see the sky and the trees, there being nothing on top of the spillway.

Appellee's witness Curtis Blackmon, Jr., testified the boat in which appellee and others were riding when it went over the spillway was owned by him, and that he took delivery of it the day before the accident; that he did not know Lake Houston had a spillway. He said there were eight people in the boat—five men and three women in a 17¾ foot boat; that his stepbrother, John Mendenhall, was operating the boat when the accident occurred; that they were heading for some trees to find a better fishing place and it was a complete surprise when they went over the spillway; that he did not see anything that caught his attention to indicate that there was a spillway in that area. He further testified he was not looking for any buoys or markers and did not see any; and that he had had "a couple of beers," and Chauncey had "one or two cans."

Sean Michael McGown, called by appellee, testified he was in the boat at the time of the accident, and when the boat approached the spillway, he saw "water running up the trees, tall pine trees," and he had no idea

there was a spillway there and saw no indication the boat was about to enter a dangerous area. He further said he saw nothing to indicate there was a spillway and saw no signs or writing or ropes or buoys visible to him, and the boat was moving approximately 20 miles per hour when it went over the spillway.

The witness John Mendenhall testified that he had no idea there was a spillway on Lake Houston; that he was operating the boat at the time it went over the spillway; that as the boat approached the spillway all he could see was water and trees; and that he did not see any warning signs or markers about a danger area.

Appellee's witness Lloyd Koenig, a commercial photographer, testified that when he was at the spillway on Lake Houston on October 21, 1976, there were markers and buoys approximately 300 yards from the spillway, and that buoys were roughly 100 yards apart in that area; that when you look in the direction of the spillway you see the spillway and the tree line appears to be the shore tree line, but such tree line is on the other side of the spillway, and that you have a false indication that it is water all the way to land, and that situation continues after you are inside the buoys; that the buoys were small and you had to get very close to them to see the writing on them that indicated there was a spillway and dam area; that if you were actually looking for buoys in the area and observing very closely there was a possibility of seeing those that are there; that he did not "see any sign out there that said 'spillway' or 'danger of spillway'"; and that you could not tell that there was a spillway there as you approached in the boat as there was nothing on top of it to indicate its location.

The witness Bill G. Healer, manager of water production and distribution for the City of Houston, testified as a witness for the City. His testimony was that the spillway elevation was 44.50 feet above sea level and the length of the spillway was 3160 feet and the dam was approximately 20 feet higher than the spillway. He further said the buoys were placed in the spillway area

in 1969 and remained there until the time of the accident involved here, and that such buoys were Coast Guard approved commercial buoys approximately 12 to 14 inches around at the top and tapered from the bottom—approximately 18 inches in diameter at bottom; that on April 25, 1973, there was approximately six inches of water flowing over the spillway and there 15 or 16 buoys which were placed approximately one-quarter mile from the spillway, and there were six telephone poles in the area with signs on them 18 inches long with four-inch lettering; that occasionally a buoy would become lost, but not often because they were anchored with a concrete anchor and a galvanized chain and were 300 to 400 feet apart; that the buoys protruded from the water approximately 40 inches and had four-inch lettering on them; that when the water is going over the spillway the spillway itself cannot be seen; and that he believed barricades on the spillway would be extremely hazardous because pressure of high water and debris would wash it away or alter it and damage the spillway.

The parties here are not in complete accord as to whether appellee was an invitee or a licensee at the time of the accident. If the owner or occupant of premises invites the public to come upon his premises he owes such persons the duty to have such premises in a reasonably safe condition and to give warning of concealed or latent perils so that invitee would not be injured. *Texas-Louisiana Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302, 306 (1936); *Carlisle v. J. Weingarten, Inc.*, 137 Tex. 220, 152 S.W.2d 1073, 1074 (1941). If the injured person was a licensee the duty owed him by the owner or occupier of the premises was not to injure him by willful, wanton or gross negligence; but if the licensor knows of a dangerous condition, and licensee does not, a duty is owed to either warn the licensee or to make the condition safe. *State v. Tennison*, 509 S.W.2d 560 (Tex.1974); *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561, 562–3 (Tex. 1976).

It should be pointed out that the rule now seems to be that whether the injured party be an invitee or a licensee, the owner or occupier of premises owes a duty to such person to warn him of a dangerous condition known to owner or occupier and not known to invitee or licensee, or to make the condition safe. In our opinion the evidence was sufficient to raise the question of whether the City was negligent.

Appellee introduced in evidence the City's answer to a request for admissions in which the City admitted it had received notice or complaint of boating accidents or the danger of same at or involving the Lake Houston spillway prior to the date of the accident and injury to appellee, and the City had either personal knowledge or reports of accidents involving boats going over said spillway prior to the accident in the case.

In points five through eight appellee contends that special issue two [1] was incorrect as a matter of law, that there was no evidence or insufficient evidence to support the jury's answer, and that parts A, B, C and D allowed a double recovery. We disagree.

Appellee testified that his shoulder was hurting while he was in the hospital; that he could not hear out of his right ear, and what he thought was blood was coming from his ear; that his right eye would "jump" and fluid would continuously drain from it; that he remained in the hospital approximately 13 days and it took him approximately two months to get on his feet; that at the time of trial he still could not hear in his right ear and as a result could not distinguish from what direction sounds came from; that he had an equilibrium or balance problem; that for six or seven months he did not have total movement of his left shoulder, and felt some pain, and did not have full use of his left arm; that his eye problem cleared up with no impaired vision; and that he had some cuts on his elbow and lower arm. He further testified that he had difficulty in his job because when he was using the telephone with his left ear he could not hear anything else; that he had and has a problem in selling insurance because he can hear out of only one ear; that he is self-conscious knowing that with a husband and wife together with him he may not be able to hear everything they are saying, and that he must ask both of them to get to one side because he has a hearing problem.

The City argues that the damages found by the jury are excessive although there is no point of error on that contention. "In determining whether a verdict is excessive the evidence must be viewed in a light most favorable to the award." *Chemical Express v. Cole*, 342 S.W.2d 773, 780 (Tex.Civ.App.-Dallas 1961, writ ref'd n. r. e.). Courts are reluctant to disturb the findings of a jury on the grounds of excessiveness of the damages if there is any evidence to sustain the award. *Hammond v. Stricklen*, 498 S.W.2d 356, 363 (Tex.Civ.App.-Tyler 1973, writ ref'd n. r. e.); *Chemical Express v. Cole*, supra.

Appellee also testified that before the accident he had worked for Upjohn with a

---

1. SPECIAL ISSUE NO. 2

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Chuancey Riggins for his injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

"You shall consider the following elements of damages, if any, and none other:

"a. Impairment of loss of hearing in the past.

"b. Impairment or loss of hearing which, in reasonable probability, he will suffer in the future.

"c. Physical impairment other than loss of hearing in the past.

"d. Physical impairment other than any loss of hearing which, in reasonable probability, he will suffer in the future.

"e. Loss of earnings in the past.

"f. Loss of earning capacity which in reasonable probability he will sustain in the future.

"g. Physical pain and mental anguish in the past.

"h. Physical pain and mental anguish which, in reasonable probability he will suffer in the future.

"Answer in dollars and cents, if any.

"Answer: $36,850.00."

salary of $850.00 per month, and that after the accident he went to work for Tennessee Gas Pipe Line Company making $650.00 per month; that he had made arrangements to take the gas pipe line company job before the accident; that later he went to work at Pix Shoe Store part time making $150.00 per week and continued to work for the gas pipe line, but quit Tennessee Gas to work for Pix full time making $250.00 to $300.00 per week; that he later changed to selling insurance for American National (and was so doing at the time of trial) with average monthly earnings of $1,830.00 per month.

■ The fact that an injured party may earn as much or more than he did before his injury does not bar him from recovering for loss of earning capacity. *Thomas v. Jenkins*, 481 S.W.2d 464, 466 (Tex.Civ.App.-Amarillo 1972, writ ref'd n. r. e.); *Mikell v. LaBeth*, 344 S.W.2d 702, 707 (Tex.Civ.App.-Houston 1961, writ ref'd n. r. e.).

We do not believe there was reversible error in the submission of special issue two. These points are overruled.

In its points nine and ten the City maintains that the trial court erred in submitting instructions to the jury on the duty owed by the City and notice of any defect, and such instruction given placed too high a duty of care on the City because after notice of any defect the City would have a reasonable time to repair any defect.

■ A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection, and any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission or fault in the pleading, shall be deemed waived unless specifically included in the objections. T.R.C.P. 274. Where one objects in his brief on appeal to the court's charge on a ground which he did not assert in the trial court, that objection is waived. See *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, 540 S.W.2d 380, 388–389 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n. r. e.), cert. denied 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095; *Northshore Bank v. Palmer*,

525 S.W.2d 718 (Tex.Civ.App.-Houston [14th Dist.] 1975, writ ref'd n. r. e.).

In its objections to the court's charge, appellant states "the duty owed to the licensee is not to harm him by willful, wanton or gross negligence. Such duty is omitted from the instruction of the Court." On appeal, appellant argues that it must have had a reasonable time after notice of the defect in which to repair before the accident in question.

■ While appellant's objection in the trial court must arguably comply with R. 274, its ground on appeal was not asserted in the trial court. We recognize that the grounds for the objection both at the trial court and before this court relate to the duty of care owed by appellant. Appellant cannot decide if the proper instruction was omitted or if that which was submitted was improper, nor can the City decide what duty it owed to appellee. Appellant failed to point out distinctly in his objections to the charge of the court the grounds which he asserts here. The objection is, therefore, waived.

The City maintains that the duty owed to persons on Lake Houston is the same duty as is owed by the City to persons on its streets and sidewalks, and relies upon *City of Houston v. Barbare*, 451 S.W.2d 522 (Tex.Civ.App.-Houston [1st Dist.] 1970, writ ref'd n. r. e.). In *Barbare* the plaintiff stepped into a hole in a city park in Houston and sued for damages for personal injuries. A trial judgment for plaintiff was reversed because the plaintiff did not obtain findings that the City caused the top over the hole to be missing or that the City had actual knowledge that it was, or that such condition had existed for such a length of time that in the exercise of ordinary care the City could have discovered and remedied it prior to the accident. *Barbare* was reversed because no standard was used in defining the City's duty to discover the hole. The general rule in Texas is that before a city may be held liable for injury caused by a defect in the city sidewalks or streets the city must have had actual or constructive notice of such defect. *City of*

*San Antonio v. Esquivel*, 163 Tex. 222, 353 S.W.2d 410, 411 (1962).

The above cited general rule is not applicable to the ultimate issue before us. Whether a dangerous condition existed and whether the City had notice of the condition are not in issue here.

The City recognized that the area on Lake Houston near the spillway was dangerous, or potentially dangerous, and took steps to warn the persons who would be on the lake of such condition by placing buoys and markers in the water near the spillway. In our view the ultimate issue which the jury should have been asked was whether the City had placed warnings which adequately warned appellee and others of the condition near the spillway. No such issue was requested or given, and there was no objection made by the City to issue one. In view of the issue submitted it is not known what act of negligence the jury may have found against the City—the issue as submitted permitted the jury to answer in the affirmative without specifically naming an act of negligence proximately causing the accident and injury. While Rule 277, T.R.C.P., gives the trial court some discretion in submitting issues broadly, we believe in a negligence case of this nature separate issues on each element would be the better practice.

The specific instruction to which the City objects in its brief was "the duty to inspect and discover any dangerous condition associated with the area in question." The objection made by the City to the charge was "We object to the instruction of the Court regarding the duty, if any, owed by the City of Houston to the Plaintiff." A city which owns and operates a lake for a municipal water supply is required to exercise ordinary care in the operation of the lake, and it is subject to the same standard of care as any other person. *City of Denton v. Gray*, 501 S.W.2d 151, 153 (Tex.Civ. App.-Ft. Worth 1973, writ ref'd n. r. e.).

Under the record here presented, we do not believe there was reversible error. We are not to be understood as approving in toto the instruction submitted to the jury. However, we have not been presented with a properly preserved point of error or the proper grounds to merit sustaining the point of error. Points nine and ten are overruled.

By its two concluding points the City maintains the trial court erred in denying the City leave to file its trial amendment, and in overruling its motion for judgment non obstante veredicto. The verdict of the jury was received on February 4, 1977. The City filed its Motion for Leave to File Trial Amendment on February 10, 1977, together with its trial amendment which alleged that appellee failed to comply with the provisions of the Charter of the City of Houston which required a notice of claim for injuries against the City must be given to the Mayor and City Council in writing, duly verified, within 90 days after such injuries were allegedly sustained, setting out when, where and how such injuries occurred and the apparent extent thereof. The trial court heard the City's motions on March 7, 1977, overruled them, and rendered judgment for appellee the same day.

The City argues that its trial amendment contained only a matter of law, did not contain any controverted fact issue, did not delay the trial, and therefore should have been allowed. The notice given to the City concerning appellee's injuries and claim was by letter from his counsel to the Mayor and was not verified.

Permitting the filing of a trial amendment is within the sound discretion of the trial court and unless it clearly appears that such discretion has been abused, its order permitting or refusing a trial amendment will not be disturbed. *State v. Beever Farms, Inc.*, 549 S.W.2d 223, 225 (Tex.Civ.App.-San Antonio 1977, writ ref'd n. r. e.).

A defense that a party failed to comply with a notice provision in a city charter is one which must be raised by a verified pleading under Rule 93(m), T.R. C.P. Appellee pled that all conditions precedent to the institution of the suit had

been met and that notice of the claim had been given, and the City did not specifically deny, by verified pleading, that all conditions precedent to filing the suit had been performed. It also appears that the allowing of the trial amendment six days after the jury verdict could and would have presented fact questions whether the City had actual notice of the injury and claim, or whether the City might be subject to the defenses of waiver and estoppel. In our view the trial court did not abuse its discretion in denying the motion for leave to file the trial amendment.

A motion for judgment non obstante veredicto should be granted only when a directed verdict would have been proper. Rule 301, T.R.C.P. In the state of the record a directed verdict would not have been proper.

Points eleven and twelve are overruled.

Judgment of the trial court is affirmed.