Alan K. CROZIER and Helen C. Crozier, Appellants,

v.

The HORNE CHILDREN MAINTENANCE AND EDUCATIONAL TRUST, J. R. Houser, Trustee, Appellee.

No. 16274.

Court of Civil Appeals of Texas, San Antonio.

Feb. 27, 1980.

Rehearing Denied April 9, 1980.

James L. Drought, Calhoun Bobbitt, Brite, Drought, Bobbitt & Halter, San Antonio, for appellants.

Tuck R. Chapin, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is a suit on a written contract of sale of a residence in Bexar County, Texas. The Horne Children Maintenance and Educational Trust, J. R. Houser, Trustee (Horne), the purchaser under said contract, brought suit against Alan K. Crozier and wife, Helen C. Crozier (Crozier), the seller, seeking rescission of the contract, alleging performance by Horne and breach thereof by Crozier. Crozier sued by counterclaim for damages stipulated in the contract and attorney's fees, alleging performance by them under the contract and breach thereof by Horne. After a non-jury trial, the trial court held that the contract was ambiguous on its face and decreed rescission.

Crozier, by one point of error, complains that the trial court erred in holding that the contract was ambiguous on its face contending that (a) the contract of sale is not ambiguous on its face; (b) Horne did not plead ambiguity; and (c) the trial court erred in permitting parol evidence over Crozier's objection to vary or contradict the

terms of the written contract entered into. Horne maintains that (a) the contract is ambiguous on its face; (b) Crozier waived the lack of any pleading of ambiguity by not excepting to Horne's petition; and (c) by counterpoint Horne asserts that the trial court erred in not allowing Horne's trial amendment pleading ambiguity.

The contract of sale is dated December 21, 1977. The agreed purchase price was $210,520, payable as follows: (a) the sum of $10,000 cash to be paid at the time of execution of the contract; (b) the execution and delivery at such time by buyer to seller of a real estate lien note in the principal sum of $30,000 payable on September 1, 1978; (c) the further sum of $31,000 cash to be paid by buyer to seller on September 1, 1978; and (d) the assumption by buyer of an outstanding real estate lien note executed by Crozier payable to the San Antonio Savings Association in the original principal sum of $132,000 dated February 25, 1976.

The other pertinent portions of the contract here involved read as follows:

## II.

(2) Buyer shall pay to First American Title Company at San Antonio, Texas, as escrow agent, the sum of $1,315.00 per month, commencing on January 1, 1978, and continuing on the first day of each month thereafter and ending with a final payment on August 1, 1978; the monies so paid to be disbursed to Sellers on September 1, 1978, upon performance by Sellers of their obligations hereunder or upon cancellation of this agreement by reason of Buyer's default.

.    .    .    .    .

(4) On September 1, 1978, Buyer shall assume the obligation to pay that one certain Real Estate Lien Note in the original principal sum of $132,000.00 dated February 25, 1976, executed by Alan K. Crozier, et ux, Helen C. Crozier, and payable to the order of San Antonio Savings Association, and Buyer shall, on the same date, deliver to Sellers a Deed of Trust to secure such assumption covering the property to be conveyed hereunder.

.    .    .    .    .

## IV.

When Buyer shall have made the payments and delivered the instruments as specified by and in accordance with the terms and provisions of Paragraph II hereof, Sellers will convey the property described in Paragraph I hereof to Buyer by Warranty Deed, on current form of the State Bar of Texas, conveying good and indefeasible title, with covenant of general warranty, subject to any conditions and restrictions, if any, existing against said property, and any other exceptions that may be hereinafter specifically set forth. Sellers are to also furnish Buyer an owner's policy of title insurance issued by First American Title Company in the amount of the purchase price. Taxes and insurance shall be prorated as of December 22, 1977.

## V.

In the event Buyer shall default in the prompt payment of any part of the purchase price as described in Paragraph II hereof, or shall fail to deliver timely any of the instruments called for in such paragraph, or shall violate or omit to perform any of the provisions of this agreement, and such default, violation or omission shall continue for a period of ten (10) days, then in any of such events, Sellers may elect to declare this contract canceled and of no further force and effect, and in the event Sellers elect to declare this contract canceled and of no further force and effect, all monies that have been paid to or deposited with Sellers hereunder shall be forfeited and belong to Sellers as liquidated damages to compensate Sellers for breach of this contract and for rental and deterioration of the property, and immediately upon this contract being declared canceled and of no further force and effect all the rights, claims and interest of the Buyer in and to said property shall thereupon terminate and be at an end and the property shall unconditionally belong to Seller; provid-

ed, however, that in the event Buyer shall default and this contract be canceled and declared of no further force or effect, all monthly payments of $1,315.00, as described in Paragraph II hereof, which have been paid to the Escrow Agent, as of the time of cancellation, shall be paid to Sellers and applied to reduce the amount of indebtedness evidenced by the Real Estate Lien Note in the amount of $30,000.00 described in Paragraph II hereof, and the Buyer and Edward Horne and wife, Diane Horne shall thereafter be liable only for the unpaid balance of said Real Estate Lien Note as so reduced. Notwithstanding the foregoing, this paragraph is subject to the conditions precedent set forth in Paragraph XIV.

After the contract was signed, Horne, pursuant to such contract, made the $10,000 cash deposit, executed a note in the amount of $30,000 payable to the Croziers, and regularly made the monthly payments of $1,315, all in accordance with the terms and provisions of said contract. Shortly before September 1, 1978, the date the transaction was supposed to be closed, Mr. Rowland, an employee of the title company, submitted a proposed settlement agreement to both Horne and Crozier for their inspection. Upon receipt of the proposed settlement agreement, Crozier made two objections: (a) the proposed settlement agreement did not require Horne to pay the taxes and insurance after December 22, 1977, as provided for in the contract, and (b) it provided for an assumption of the existing indebtedness as of December 22, 1977, rather than September 1, 1978, as provided for in the contract. Mr. Rowland then prepared another settlement agreement which corrected these provisions accordingly. Both parties tendered documents for closing (deed, deeds of trust, etc.) on or prior to September 1, 1978. Horne, although aware of Crozier's objections, tendered the amount of money indicated in the first submitted settlement agreement and refused to close under the second settlement agreement. Both parties gave notice of default, Horne contending that the refusal of Crozier to close under the first settlement agreement was a breach of contract, and Crozier contending that the tender made by Horne was not in conformity with the contract and constituted a breach thereof. Horne filed suit alleging full performance under the terms of the contract and a breach by the Croziers in refusing to close, and asked for rescission of the contract. Crozier counterclaimed for the liquidated damages stipulated in the contract alleging Horne's failure to perform under the provisions of the contract and also sought reasonable attorney's fees.

In this opinion we will discuss together the respective contentions made by Horne and Crozier, and they will be discussed generally as follows: (1) lack of pleadings as to ambiguity, (2) parol evidence, and (3) ambiguity.

*Lack of Pleadings*

A person seeking to establish ambiguity under a written contract must specifically plead such ambiguity. *Vickers v. Vickers*, 553 S.W.2d 768, 770 (Tex.Civ.App. —Beaumont 1977, no writ); 13 Tex.Jur.2d *Contracts* § 373 (1960). Generally, a trial court cannot grant relief that is without pleadings to support it and a judgment which is not supported by the pleadings is not warranted. *Oil Field Haulers Association v. Railroad Commission*, 381 S.W.2d 183, 191 (Tex.1964); *City of Fort Worth v. Gause*, 129 Tex. 25, 29, 101 S.W.2d 221, 223 (1937); *Carreon v. Texas State Department of Public Welfare*, 537 S.W.2d 345, 347 (Tex. Civ.App.—San Antonio 1976, no writ); *Edwards Feed Mill v. Johnson*, 302 S.W.2d 151, 154 (Tex.Civ.App.—San Antonio 1957), rev'd on other grounds, 158 Tex. 313, 311 S.W.2d 232 (1958); *Jones v. Jones*, 301 S.W.2d 310, 314 (Tex.Civ.App.—Texarkana 1957, writ ref'd n. r. e.); *Forman v. Barron*, 120 S.W.2d 827, 830 (Tex.Civ.App.—El Paso 1938, writ ref'd).

A party may not plead one theory of recovery and have a judgment based upon another theory not pled. *Douthit v. Anderson*, 521 S.W.2d 127, 128–29 (Tex.Civ.App.—Dallas 1975, no writ); *Payne v. Laughlin*, 486 S.W.2d 192, 194 (Tex.Civ.App.—Dallas

1972, no writ); *Colvin v. Baskett*, 392 S.W.2d 804, 806 (Tex.Civ.App.—Amarillo 1965, no writ); *Johnson Aircrafts, Inc. v. Wilborn*, 190 S.W.2d 426, 430 (Tex.Civ.App. —Fort Worth 1945, writ ref'd w. o. m.).

■ Horne asserts that the Croziers waived the lack of pleading of ambiguity by not excepting to its petition. There was nothing wrong with Horne's petition upon which he went to trial and there was no reason to except to it. Horne's petition pled the contract, pled its performance by Horne, pled breach by Crozier and asked for a rescission. As a pleading this was adequate. Crozier's pleading specifically denied the performance of the contract by Horne and counterclaimed for stipulated damages alleging breach of the contract by Horne. The pleadings in the case framed the issue clearly and there was no occasion for special exceptions.

### Parol Evidence

■ As a general rule in the absence of fraud, accident, or mistake, extrinsic evidence is inadmissible to vary, add to, or contradict the terms of a valid written instrument that on its face is complete and unambiguous. *Bradford v. Brady*, 413 S.W.2d 780, 782 (Tex.Civ.App.—Dallas 1967, no writ); 23 Tex.Jur.2d *Evidence* § 342 (1961).

Our supreme court in *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977 (1941), said:

(a) When parties have reduced their contract to writing, and the terms and conditions of the written instrument are expressed without uncertainty as to the subject matter and nature of the contract, the writing is presumed to contain the whole of the agreement, and contemporaneous parol evidence is not admissible to contradict or vary the terms of the written instrument. *Self v. King*, 28 Tex. 552.

(b) If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a con-

tract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction. *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217.

*Id.* at 154, 146 S.W.2d at 980.

### Ambiguity

■ The general rule is that when the written contract is clear and certain it will be taken to express the will of the parties and that it is not proper to look elsewhere for their intention. *Id.* at 154, 146 S.W.2d at 980; *Wooten Properties, Inc. v. Smith*, 368 S.W.2d 707, 708–09 (Tex.Civ.App.—El Paso 1963, writ ref'd). In *Mattison, Inc. v. W. F. Larson, Inc.*, 529 S.W.2d 271 (Tex.Civ. App.—Amarillo 1975, writ ref'd n. r. e.), the court said:

The first question is whether the contract is ambiguous. A written contract is not ambiguous if it can be given one certain or definite legal meaning or interpretation. *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941). Unless they are so patently conflicting that it is impossible to do so, the provisions must be read together so as to give effect to all provisions and so that none are rendered meaningless. *Universal C. I. T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). If the provisions can be harmonized and reconciled, the contract is not ambiguous, and parol evidence is not admissible to create an ambiguity or to give the contract a meaning different from that which its language imports. *Lewis v. East Texas Finance Co., supra.*

*Id.* at 272.

■ There are no pleadings of fraud, accident, or mistake by either party herein. Neither party pleaded in any manner that the contract was ambiguous in any respect.

The issue was joined on the question whether Horne tendered, as he contended, at time of closing, full performance of the contract of sale, or whether, as Crozier contended, Horne's tender was materially defective. The question of ambiguity did not arise until after Mr. Rowland of the Title Company, a witness for Horne, completed his testimony. During his testimony, Rowland was given the contract here involved and testified that Paragraph IV of the contract provided that taxes and insurance shall be prorated as of December 22, 1977; and further testified that subparagraph (4) of Paragraph II of the contract requires the buyer to assume the existing indebtedness on September 1, 1978. When asked whether the first proposed settlement agreement submitted by him charged the purchaser for all taxes and insurance after December 22, 1977, he stated that it did not. When asked whether such proposed first settlement agreement required the buyer to pay the existing indebtedness on September 1, 1978, he stated that it did not. It is clear from such testimony that Rowland's first proposed settlement agreement which formed the basis of Horne's lawsuit did not comply with the provisions of the contract and the tender made in accordance with this settlement agreement was insufficient for precisely the reasons alleged by the Croziers in their counterclaim.

After Rowland completed his testimony, Mr. Houser of the Horne Trust was called as a witness by Horne. Thereafter, during Houser's testimony, attempts were made to vary or explain the written contract by evidence of prior negotiations, unexecuted previous contractual drafts, and circumstances surrounding such negotiations. Such testimony was consistently objected to by Crozier under the parol evidence rule, and such objections were sustained for the most part in the early stages of the trial. After a period of time, the trial court began to let in some of such testimony apparently under the theory that in order to properly pass on the question of ambiguity, it needed to hear extrinsic evidence such as copies of prior writings and drafts of agreements leading to the final agreement. Crozier consistently objected, but some extrinsic evidence was let in. The following excerpts from the statement of facts are illustrative. When Horne attempted to introduce a prior unexecuted rough draft of the contract of sale, the following exchange occurred:

Q. And is that particular document, would it throw any light on the interpretation that needs to be given the contract of Sale that was executed by the parties?

A. Yes sir. It would.

Mr. Bobbitt: I object to that question. It's a matter of law. It couldn't cast any such light unless the Court, in the first instance, determined the contract of sale to be ambiguous.

The Court: That's interesting.

Mr. Bobbitt: Your Honor, I believe that that's clearly the law, that no evidence of anyone's prior intentions, prior understandings, preliminary negotiations or for that matter their subsequent understanding of the contract is relevant in any way unless there is a threshold finding that the contract, itself, is ambiguous. Those points are addressed in the brief.

The Court: Prior to this time, counsel, I have not attempted to think about in terms of calling it ambiguous or not ambiguous. But as I'm going through this from day to day, I'm beginning to see that it is more ambiguous, and while I have been sustaining objections such as this, I'm beginning to wonder whether I'm doing the proper thing if I really am thinking in terms of the fact that it might have been ambiguous.

Mr. Bobbitt: Well, Your Honor, may I inquire whether you are reaching a conclusion that the contract is ambiguous from the four corners of the instrument, itself, or as a result of hearing testimony concerning what different constructions [were] placed on it by different people.

Mr. Chapin: Let me say this in order to save time. This is all before the Court, and the Court's got a right to consider whatever it wants to consider, and in order to get on with the case and get it concluded, I'm just going to suggest that

the Court go ahead and listen to the evidence and then you may decide later. The Court: I would normally sustain this, but I'm beginning to get more anxious about it because of my feeling, both from the four corners of the instrument and of course, from Mr. Crozier's testimony, and now from Mr. Houser's.

Later, counsel for Horne introduced yet another preliminary and unexecuted contract proposal dealing with the same subject matter, and the following occurred:

Mr. Bobbitt: Your Honor, this Exhibit has already been marked and offered and been excluded, and we'll simply renew our objection. It's irrelevant. Preliminary draft that was not entered into. The contract of sale that was entered into is the only evidence of the agreement.

Mr. Chapin: We offer this for the purposes of showing to the Court specifically that the original draft as it contains specific words or specific clauses stating the position that the defendants in this case now espouse. In other words, that contract as written is the way that they say it, the end result should be in this suit and that that contract was not accepted and was to changed to his present for the express purpose of not permitting double payment of the taxes and insurance by Mr. Houser.

Mr. Bobbitt: Well, Your Honor, the Contract of Sale as executed is before the Court. It's for the Court to construe, to decide whether it requires the payment of taxes and insurance by Mr. Houser and whatever they may have talked about, written, before their intentions were integrated into the Contract of Sale are totally irrelevant and inadmissible.

The Court: Well counsel, I think I held that in abeyance earlier, that particular exhibit. Because I didn't know exactly where we were going on the particular contract at the time. Whether the Court was going more in the direction of breach of contract, rescission or that there wasn't any contract. I'm inclined at this time to allow it in because I have a little more clear direction as to where I'm going.

Mr. Bobbitt: Is Your Honor informing us now of a ruling that the Contract of Sale, the actual Contract of Sale is ambiguous?

The Court: Well, I haven't ruled that way yet. But that's the direction that I'm—I feel like I need to go in now, which I wasn't necessarily going in at the beginning.

.     .     .     .     .

The Court: Well, and I didn't want it in if I wasn't going in that direction. That was the real crux of the matter as far as I was concerned. But the more and more I've heard of this, and I do want to really have a little time to review your brief before I would make a ruling. That's why I really haven't made a ruling.

Horne thereafter re-offered the preliminary unexecuted drafts and eventually the court admitted them into evidence.

The general rule is that where the written contract is clear and certain it will be taken to express the will of the parties, and that it is not proper to look elsewhere for their intention. *Milliken v. Callahan County*, 69 Tex. 205, 6 S.W. 681. *Southern Insurance Co. v. Federal Service Finance Corp.*, 370 S.W.2d 24 (Tex.Civ.App.—Austin 1963, writ dism'd).

We have concluded that because of the errors hereinbefore discussed this case must be reversed. Horne, by counterpoint, urges that if this case is reversed it should be remanded instead of rendered, because the trial court erred in refusing to allow the filing of Horne's trial amendment pleading ambiguity.

It appears from the record that such trial amendment was not offered until about a month after the trial was over. A trial court has broad discretion in allowing or refusing trial amendments. Here, we have a trial amendment which was not offered until after both sides had rested and closed. In the absence of trial by consent of the issues framed by the trial amendment, which we do not have here, the discretion of a trial judge to refuse the filing of such trial amendment is very broad, and

will ordinarily not be disturbed on appeal. *City of Houston v. Riggins*, 568 S.W.2d 188, 194 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.); *City of Houston v. LeBlanc*, 562 S.W.2d 20, 22 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.); *Burnett v. File*, 552 S.W.2d 955, 957 (Tex.Civ.App.—Waco 1977, writ ref'd n. r. e.); *Simon v. Watson*, 539 S.W.2d 951, 958 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.); *Myers v. Cliff Hyde Flying Service, Inc.*, 325 S.W.2d 841, 848 (Tex.Civ.App.—Houston 1959, no writ). Horne's counterpoint is overruled.

We hold that: (1) the contract of sale was not ambiguous on its face; (2) there are no pleadings to support the judgment on the basis of ambiguity; (3) the trial court erred in permitting parol evidence to vary or contradict the terms of the contract involved; and (4) the trial court did not err in refusing to permit the filing of the trial amendment.

It is undisputed that Horne made eight monthly payments in the sum of $1,315, totaling $10,520. Under the contract Crozier is entitled to that sum plus the difference between that sum and $30,000, which is $19,480, or a total recovery of $30,000. Crozier seeks attorney's fees as follows: $10,-000 through the trial court; $3,000 in the Court of Civil Appeals; $1,500 in the event application for writ of error is filed in the Supreme Court; and an additional $1,500 if a writ is granted. Horne does not contest the award of such attorney's fees, and there is evidence as to the reasonableness of such attorney's fees.

The judgment of the trial court is reversed and judgment here rendered for Crozier in the sum of $30,000, with interest at the rate of six per cent (6%) per annum on such sum from September 1, 1978, until date of judgment; for attorney's fees of $10,000 in the trial court; $3,000 in the Court of Civil Appeals; $1,500 in the event an application for writ of error is filed in the Supreme Court, and an additional $1,500 if the writ of error is granted. The total amount of the judgment is to bear interest at the rate of nine per cent (9%) per annum from date of the judgment until

paid. All court costs are assessed against Horne.