COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |
|---|---|
| § | No. 08-23-00036-CV |
| § | Appeal from the |
| IN THE INTEREST OF M.I.J., A CHILD. § | 65th Judicial District Court |
| § | of El Paso County, Texas |
| § | (TC# 2021DCM3732) |

## MEMORANDUM OPINION

Appellant S.S. challenges the trial court's order terminating her parental rights to M.I.J.[1] We affirm the judgment of the trial court.

## I. BACKGROUND

On June 24, 2021, Appellee Department of Family and Protective Services (DFPS) filed its original petition. That same day, the trial court ordered the removal of M.I.J. and named DFPS her temporary sole managing conservator. On September 20, 2022, DFPS filed its third amended petition. A final hearing was held on this case over two days—December 14, 2022, and January 9, 2023. At the time of the final hearing, M.I.J. was 18 months old.

### A. Trial Testimony

---

[1] To protect the privacy of the parties, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(a), (b)(2). In early filings, M.I.J. is referred to as M.S. For clarity, we use M.I.J. throughout this opinion.

At the December 14 hearing, the parties had outstanding issues they wished to address before the final hearing. Because the dismissal deadline was imminent, the trial court heard evidence to start the final hearing then paused testimony to deal with outstanding issues. After brief testimony from DFPS Caseworker Marinette Leyva, the trial court recessed the final hearing for a future date. DFPS introduced its exhibits at the start of the second day of testimony. M.I.J.'s medical records from the thirteen-day hospitalization following her birth were admitted without objection from S.S. These records include multiple references to M.I.J.'s test results, which were positive for THC. Key witness testimony is summarized below.

### 1. The caseworker's testimony

Leyva was assigned to the case in early December 2022. Prior to Leyva, Iliana Ladd was assigned to this case. Although she was new to the case, Leyva was familiar with the DFPS case file. Leyva testified M.I.J. was removed because she tested positive for THC at birth. Further, S.S. could not provide a safe, stable home for M.I.J. and could not name a permanent caretaker or placement for M.I.J. at that time. DFPS requested S.S. complete the following services: substance abuse assessment; parenting classes; psychological evaluation; and consistent visitation with M.I.J. S.S. completed the substance abuse assessment—no recommendations were made. S.S. failed to complete the parenting classes and psychological evaluation. Leyva testified S.S. was also required to take monthly drug tests—her compliance with the drug testing schedule was inconsistent. S.S. last took a drug test for this case in August 2022. Leyva further testified DFPS had concerns because of S.S.'s extensive criminal history. According to Leyva, S.S. was arrested during the pendency of this case.

Leyva testified S.S. did not visit M.I.J. consistently. DFPS initially scheduled two-hour visits, twice a week. According to Leyva, S.S. last visited M.I.J. in June 2022. On August 15, 2022,

the trial court ordered S.S.'s visits would be automatically suspended if she missed another and failed to notify DFPS in a timely manner beforehand. Soon after the trial court's order, S.S.'s visits were automatically suspended because she missed another visit. S.S. missed this visit because she had to go to the hospital for an injury when the visit was scheduled. According to Leyva, DFPS attempted to work with S.S. to restart the visitation but were unable to do so.

Leyva testified S.S. had inconsistent contact with DFPS. According to Leyva, caseworkers had trouble contacting S.S. through e-mail or text. During the inconsistent contact, S.S. did not articulate a plan to care for M.I.J. Leyva testified DFPS attempted to assist S.S. by providing bus tokens and transportation for visitation and services. S.S. was also offered resources in the community, including referrals to the Salvation Army and homeless shelter.

Leyva testified regarding M.I.J.'s current placement. M.I.J. had been in the same foster home since June 2021. The home was appropriate and clean. The foster parents were meeting M.I.J.'s physical and developmental needs by helping her reach her milestones. M.I.J. was, further, receiving speech and occupational therapy. Her foster parents were helping her reach her milestones. M.I.J. was doing very well in her foster home and bonded with her foster family. According to Leyva, the foster parents planned to adopt M.I.J. if parental rights were terminated. Finally, Leyva testified she believed it was in M.I.J.'s best interest to have S.S.'s parental rights terminated.

### 2. S.S.'s testimony

S.S. testified on the second day of the final hearing. She admitted M.I.J. tested positive for THC at birth. She claimed she had not used drugs during her pregnancy but may have smoked marijuana in the past. Further, she claimed to have done many UAs throughout this case and none were positive for marijuana. S.S. was willing to take a test the day of the final hearing and was

3

confident it would be clean. S.S. testified she had completed every required service except the parenting classes and psychological evaluation. S.S. planned to finish the required parenting classes on January 15, 2023. She did not provide any paperwork demonstrating the completion of services but claimed the only service with paperwork was the parenting classes. According to S.S., Ladd was responsible for organizing the psychological evaluation on her behalf and had failed to do so.

In terms of her visitation, S.S. testified she had been doing well and Ladd had told her she wanted to return M.I.J. S.S. admitted she missed a few visits because of transportation issues. According to S.S., the trial court cancelled her visits after she had to go to the hospital and get stitches, forcing her to miss a scheduled visit. S.S. then missed the makeup visit because she did not know when it was scheduled. When pressed, S.S. admitted she attended an admonishment hearing because she had missed thirteen visits before the last one.

S.S. testified about her contact with DFPS. According to S.S., Leyva never reached out to or spoke with her. Further, S.S. reported she has been emailing Ladd to attempt to schedule another drug test, unsuccessfully. She had also been reaching out to DFPS but had received no communication from the department. S.S. admitted the address she gave Ladd at the admonishment hearing was incorrect; but she had made a mistake and did not purposefully give the wrong address. Further, S.S. admitted she was arrested twice in August 2022 on warrants and a burglary charge. S.S. clarified; however, the burglary charge was going to be dropped.

Finally, S.S. testified she did not want her rights to M.I.J. terminated. S.S. reported M.I.J. would be safe if she was returned.

### 3. CASA recommendation

Neither party called the CASA advocate; but the trial court requested their recommendation. CASA recommended termination of parental rights and that M.I.J. remain in her current placement.

### B. The Trial Court's Judgment

At the close of the final hearing, the trial court terminated S.S.'s parental rights to M.I.J. The trial court found clear and convincing evidence supported termination based on Subsections (E), (N), and (O) of § 161.001(b)(1) of the Texas Family Code. The trial court also found terminating S.S.'s parental rights was in M.I.J.'s best interest. Finally, the trial court named DFPS permanent managing conservator.

S.S.'s appeal followed.

## II. DISCUSSION

In four issues, S.S. challenges the admission of M.I.J.'s positive drug results and the legal and factual sufficiency of the trial court's predicate findings on Subsections (E), (N), and (O). We affirm the trial court's judgment.

### A. Hearsay Issue

S.S.'s first issue challenges the trial court's admission of statements regarding M.I.J.'s positive drug test results. She argues the statements were inadmissible hearsay. Because any error would be harmless, we affirm.

We review a trial court's admission of evidence for abuse of discretion. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). A trial court abuses its discretion when it rules without regard to any guiding rules or principles. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). "The general rule is error in the admission of testimony is deemed

harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (citing *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984); *City of Houston v. Riggins*, 568 S.W.2d 188, 190 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.)).

On appeal, S.S. challenges Leyva's testimony that M.I.J. tested positive for THC at birth. S.S. argues the drug test testimony was inadmissible hearsay and required expert witness testimony. Further, S.S. challenges Leyva's testimony because it was given before the medical record was admitted.

At the final hearing, Leyva testified "the child was born positive to THC." Other evidence presented at the final hearing rendered Leyva's complained of testimony harmless. First, medical records from M.I.J.'s birth and subsequent hospital stay were admitted without objection.[2] The medical records make multiple references to M.I.J. testing positive for THC. Second, S.S. testified, without objection, M.I.J. tested positive for THC at birth. The medical records and S.S.'s testimony were both admitted without objection from S.S. and are the same or similar to Leyva's complained of testimony. Therefore, any error in admission of Leyva's testimony was rendered harmless by the subsequent same or similar evidence. *See In re A.M.*, No. 13-09-00276-CV, 2009 WL 3647370, at *5 (Tex. App.—Corpus Christi–Edinburg Nov. 5, 2009, no pet.) (mem. op.) (holding any erroneous admission of hearsay regarding the child's addiction to cocaine at birth harmless because other evidence of the child's drug positive birth was introduced without objection).

We overrule S.S.'s first issue.

---

[2] While counsel for M.I.J.'s father objected to any hearsay within the exhibits, S.S.'s counsel specifically stated "Judge, for the record, I don't object to any of the other exhibits."

**B. Termination of Parental Rights**

S.S.'s second, third, and fourth issues challenge the legal and factual sufficiency of the evidence supporting the trial court's predicate findings for termination under Texas Family Code § 161.001(b)(1). The natural right of a parent to the care, custody, and control of their children is one of constitutional magnitude. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see also Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982) (acknowledging that a parent's rights to "the companionship, care, custody, and management" of their children are constitutional interests, "far more precious than any property right"). While parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

Parental rights may be involuntarily terminated through proceedings brought under § 161.001 of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove termination is in the best interest of the child. *Id*. Only one predicate finding under § 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We review parental rights termination appeals under the clear and convincing evidence standard. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

**1. Standard of review**

When reviewing the legal sufficiency of the evidence in a termination case, we consider all evidence in the light most favorable to the trial court's finding, "to determine whether a

7

reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In re J.P.B.*, 180 S.W.3d at 573. We do not disregard undisputed facts but do disregard any evidence that a reasonable fact finder could have disbelieved or found not credible. *Id.*

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenged findings. *Interest of K.A.C.*, 594 S.W.3d 364, 372 (Tex. App.—El Paso 2019, no pet.). We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.* A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved the dispute in favor of its finding. *Id.* The evidence is factually insufficient if the disputed evidence the reasonable fact finder could not have credited in favor of its finding is so significant, they could not have reasonably formed a firm belief or conviction. *Id.*

Per the Texas Supreme Court's instructions, we will begin our review by focusing on Subsection (E). If this ground is sufficient to provide a basis for the trial court's judgment, we need not review the other alternate grounds. *Interest of N.G.*, 577 S.W.3d 230, 234 (Tex. 2019).

### 2. Endangerment Predicate Finding

Under Subsection (E), a trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence the parent "'engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.'" TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Endanger means "'to expose to loss or injury; to jeopardize.'" *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Although endanger

8

means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, the conduct need not be directed at the child, nor must the child suffer actual injury. *Id.* "It is enough if the youth is exposed to loss or injury or his physical or emotional well-being is jeopardized." *In re P.E.W.*, 105 S.W.3d 771, 777 (Tex. App.—Amarillo 2003, no pet.).

The relevant inquiry under Subsection (E) is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See Interest of K.A.C.*, 594 S.W.3d at 372–73. Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, or conscious course of conduct by the parent. *Id.* When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions before and after the child was born and before and after the child was removed. *Id.* Further, the conduct may occur outside of the child's presence. *Id.*

Here, M.I.J. tested positive for THC at birth. While S.S. denied drug use during her pregnancy, she admitted she may have smoked marihuana before. Further, S.S. was inconsistent with her visitation, missing more than a dozen visits. While S.S. claimed she was in the hospital for one of the missed visits, she admitted thirteen missed visits occurred before that hospitalization. Further, she missed the scheduled makeup visit.

Deferring to the trial court's conclusions and indulging all reasonable inferences, the evidence presented could lead a reasonable trier of fact to determine S.S. used marijuana during pregnancy and such drug use endangered M.I.J. and exposed her such that she was positive for THC at birth. *See In Interest of L.G.R.*, 498 S.W.3d 195, 203 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A reasonable fact-finder could believe that a child's testing positive for a controlled substance at birth could be caused by its mother's use of the controlled substance during

9

pregnancy."); *In re A.J.R.*, No. 13-08-00607-CV, 2009 WL 2574079, at *7–8 (Tex. App.—Corpus Christi–Edinburg Aug. 20, 2009, no pet.) (mem. op.) ("Although [the child] did not suffer any actual physical harm, the evidence clearly shows that [the mother] exposed [the child] to loss or injury and jeopardized her well-being when she abused cocaine during her pregnancy[.]").

Therefore, viewing the evidence with deference to the fact finder's conclusions and indulging every reasonable inference, we hold there is legally sufficient evidence to support the trial court's finding that S.S. engaged in a course of conduct endangering the child's physical and emotional well-being under Subsection (E). Accordingly, we find the evidence is legally sufficient to support the trial court's finding.

Further, we conclude, after considering all the evidence, the evidence presented permits a reasonable fact finder to form a firm belief or conviction that S.S. engaged in an endangering course of conduct by using marijuana during pregnancy such that M.I.J. tested positive for THC at birth. Therefore, there is factually sufficient evidence to support the trial court's predicate finding under Subsection (E).

We overrule S.S.'s second issue.

Having determined the trial court's Subsection (E) finding rests on legally and factually sufficient evidence and is sufficient, standing alone, to support the trial court's judgment, we decline to address S.S.'s third and fourth issues, relating to Subsections (N) and (O), as they are unnecessary to the resolution of this appeal. *See* TEX. R. APP. P. 47.1.

### 3. Best Interest Finding

Furthermore, the existence of a predicate termination ground is not enough to allow a trial court to order termination of parental rights. Therefore, we must analyze whether termination of

parental rights was also in the child's best interest. *See In Interest of B.C.S.*, 479 S.W.3d 918, 923 (Tex. App.—El Paso 2015, no pet.).

A determination of best interest necessitates a focus on the child, not the parent. *Id.* There is a strong but rebuttable presumption that it is in the child's best interest to preserve the parent-child relationship. *Id.* When analyzing the best interest of the child, we consider the *Holley* factors:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (internal citations omitted). "While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child." *In Interest of J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied))) (citing *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

*a. The Desires of the Child and Stability of the Home or Proposed Placement*

At the time of the final hearing, M.I.J. was 18 months old and too young to articulate a preference. If a child is too young to articulate a preference, the fact finder may consider the child's bond with the foster family and whether she has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because there is overlap between the child's bond and the stability of her proposed placement, we consider these factors together.

Here, Leyva testified M.I.J. was bonded with her foster family. She had been with the same foster family since June 2021. Further, the foster parents planned to adopt M.I.J. if parental rights were terminated.

On the other hand, S.S. was inconsistent with visitation and had not visited M.I.J. since August 2022, when her visits were suspended. No evidence was presented regarding M.I.J.'s bond, if any, to S.S.

Therefore, viewing the evidence with the required deference, both these factors support the best interest finding.

b. *The Emotional and Physical Needs and Dangers*

Leyva testified M.I.J. received several services at her foster home including speech and occupational therapy. Her foster parents were ensuring M.I.J. meets her milestones and she is doing well in the placement. In contrast, S.S. had her visits suspended in August 2022 and has not seen M.I.J. since that time.

When reviewing the sufficiency of a best interest finding, evidence supporting predicate grounds for termination can also be considered. *In Interest of L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Further, "[a] fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *Interest of O.E.R.*, 573 S.W.3d 896, 907 (Tex. App.—El Paso 2019, no pet.) (citing *In Interest of R.A.G.*, 545 S.W.3d 645, 653 (Tex. App.—El Paso 2017, no pet.).

Here, M.I.J. tested positive for THC at birth. While S.S. denied drug use during pregnancy, she admitted she may have used marijuana in the past. A reasonable fact finder could determine that a newborn testing positive for THC could be caused by a mother's use of marijuana during

the pregnancy. *In Interest of L.G.R.*, 498 S.W.3d at 203. Therefore, deferring to the trial court's conclusions and indulging all reasonable inferences, the trial court could reasonably have disbelieved S.S. and found that she used marijuana during pregnancy such that M.I.J. tested positive for THC at birth. The trial court could have determined S.S. had endangered M.I.J. in the past and would continue to do so in the future.

These factors support the trial court's best interest finding.

c. *The Parental Abilities and Plans for the Child of the Individuals or Agencies Seeking Custody.*

M.I.J. was removed more than a year before the final hearing, but S.S. had still not completed her required parenting classes. Further, DFPS had difficulties remaining in contact with S.S. and she provided an incorrect address to the department. Finally, S.S. had her visitation suspended due to missing more than a dozen visits. While S.S. did not want her parental rights terminated, she did not articulate any plans for M.I.J. On the other hand, DFPS has placed M.I.J. with a foster home which provides her physical and developmental needs. According to Leyva, M.I.J. is doing well at the foster home and bonded with her foster family. The foster parents have, further, told DFPS they wish to adopt M.I.J. if the parental rights are terminated. Based on this evidence and viewing it with the required deference, the trial court's best interest finding is supported by both the stability, abilities, and plans of M.I.J.'s foster home. The best interest finding is further supported by S.S.'s failure to complete parenting classes, remain in contact with DFPS, and failure to consistently visit M.I.J. *See In re A.B.*, 269 S.W.3d 120, 129 (Tex. App.—El Paso 2008, no pet.) (finding evidence sufficient to support a best interest finding where the parent refused to participate in services, did not stay in contact with the department, and refused to provide the department with contact information).

After reviewing all the evidence with deference to the fact finder's conclusions and indulging every reasonable inference, a reasonable fact finder could have formed a firm belief or conviction that termination of S.S.'s parental rights was in M.I.J.'s best interest. We conclude the evidence supporting the best interest finding is supported by both legally and factually sufficient evidence.

## CONCLUSION

We overrule S.S.'s first and second issues, decline to address her remaining issues, and affirm the order terminating S.S.'s parental rights to M.I.J.

YVONNE T. RODRIGUEZ, Chief Justice

May 31, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.