## Mann Brothers v. City of Henderson.

(Decided May 29, 1913.)

### Appeal from Henderson Circuit Court.

1. Municipal Corporations—Maintenance of Water Works—When Customer Puts in Pipes for His Own Use—Action by for Loss—When Recovery May Be Had.—A city which maintains its own water works system must use ordinary care in maintaining its mains and pipes in proper condition, and a customer who uses the water, putting in the pipes on his own property, must use ordinary care to keep them in condition. If a loss occurs where both the parties have been negligent the plaintiff cannot recover if the loss would not have occurred but for his negligence, unless the city after notice of the trouble failed to use ordinary care to avert the loss.

2. Instructions—When Complaint Cannot Be Made of.—No complaint of the instructions can be urged on appeal if they are not complained of in the grounds for new trial.

VANCE & HEILBRONNER for appellants.

JOHN C. WORSHAM for appellee.

Opinion of the Court by Chief Justice Hobson—Affirming.

Mann Bros. operate a department store at the northeast corner of Second and Main streets in Henderson, Kentucky, in a large three story building. The city of Henderson owns and operates its own water works. The water main runs down Main street on the opposite side

of the street from the Mann building, and six or eight feet from the curb line on that side. Mann Bros. installed a hydraulic elevator in their store building, the water for which was supplied by tapping the main at a point opposite the building with a four inch pipe. The city made the connection with the main and brought the pipe to the Mann property line. Mann Bros. there connected with the city pipe, and carried the water within the building. The connection between their pipe and the city pipe was by means of a lead joint, that is, one pipe went within the other, and lead was packed in between to close the joint. On the morning of May 24, 1911, about nine o'clock a leakage was discovered in the pipe by means of which water was running into the basement of the store, which was used for the storage of much of their stock. When first discovered there was very little water in the basement. The office of the secretary of the Water Company is in the central part of the city; the superintendent's office is at the water works. According to the testimony for the plaintiff, Mann immediately telephoned the secretary telling him of the leak, and asking him to have the water turned off; and according to Mann's testimony, he said that he would tell his men as soon as he could, but he could not locate them at the time. Mann also telephoned to a plumber who came at once, but was unable to locate the cut-off, as he did not know where it had been placed. It was required by ordinance that the cut-off should be placed on the same side of the street as the property and near the curb; but in case of large pipes like this, it was usual to place the cut-off on the opposite side of the street so that if the wall fell in a fire, the cut-off could be reached, and the large stream of water turned off. The plumber seems not to have known this. The city had put some additional rock on the street, and this rock or some of it, had collected over the water box. The plumber dug around looking for the water box, and threw the dirt which he dug or part of it, upon it. Finally about 11:30, and when the stream of water had been running into the basement for over two hours, the superintendent at the water works learned of the trouble and came at once to the scene. As soon as he had the dirt removed from over the water box, he cut off the water, but in the meantime considerable damage had been done to the stock of Mann Bros. in the basement to recover for which they brought this suit against the city, alleging that they had been damaged to the

amount of $531.20. The city by its answer denied any negligence on its part and pleaded that the loss was due to the negligence of Mann Bros. The proof for the city was to the effect that the only notice that the secretary got of the trouble was that Mann Bros. sent there to borrow a pump which he lent them, and that he was not notified to have the water cut-off. The superintendent was at the water works, and no notice of the trouble reached him until as above stated. While the water box was covered up by a few inches of rock and some dirt, it could easily have been discovered by a person who knew where to look for it, and it was placed where such boxes were regularly placed. The proof for the city also showed that the escape of the water was due to the lead working out of the joint where Mann's pipe joined the city pipe, a joint made by Mann; that after the elevator was installed, the working of the elevater caused what is called a water hammer, and the hammering of the water caused the pipe to leak at this joint. The superintendent called Mann's attention to it telling him it would flood the basement if not fixed; that he must put in an air chamber. Mann had an air chamber put in, but it was allowed to get full of water, and therefore the condition was practically as it was before. The superintendent called his attention to this condition, and told him as before that there was danger of the basement being flooded, but it was not remedied. According to the proof for the city, the superintendent in going there monthly to read the meter often observed the leak and often called Mann's attention to it; but things were allowed by Mann to run along in this way until the trouble in controversy occurred. On this proof the court instructed the jury in substance that it was the duty of the city to use ordinary care in maintaining on its line of water pipe at some suitable point a reasonably suitable cut-off; and if it failed to do this, and by reason thereof, the plaintiffs' premises were flooded, they should find for them; also, that it was the duty of the plaintiffs to promptly notify the defendant after discovering the flow of the water in the cellar, and it was the duty of the defendant to use ordinary care, and diligence on receiving such notice to shut the water off from the building; and if the plaintiffs gave the notice and the city failed to use ordinary care and diligence in turning off the water, they should find for the plaintiffs; but that although the defendant was negligent yet if the plaintiffs were also negligent in

maintaining the connection with the defendant's pipe or was negligent in maintaining the air chamber to the elevator used by them, and that but for such negligence on their part, the injury would not have occurred, they should find for the defendant. The jury returned a verdict in favor of the city. The court having overruled the plaintiffs' motion for a new trial and entered judgment on the verdict, the plaintiffs appeal.

It is insisted for the plaintiffs that the verdict is palpably against the evidence, but we cannot disturb it on this ground. There was abundant evidence for the city to sustain the verdict of the jury showing that Mann Bros. failed to give the city notice of the trouble, and that if the notice had been seasonably given the loss might have been avoided by it. There was abundant evidence for the city to the effect that the water box was placed at the usual point for the placing of such water boxes and constructed in the proper way. There was no defect in the water box except that it had become covered over with some rock and dirt, and this often happens from the washings of the soil where the water box is not placed in a pavement or solid surface.

It is insisted that the court erred in submitting to the jury the question of contributory negligence. Counsel say:

"And, further, had the air chamber been full of water, had the pipes in the building all been rotten and fallen to pieces, we submit that appellants had the right to rely upon appellee having the safety valve in street accessible and in good condition and so constructed as to shut off the water from the building and prevent damage. We further submit that the safety valve was not accessible or properly maintained when the city permitted two or three inches of dirt and rocks to accumulate on top of the safety valve so that the valve could not be seen or found."

It was the duty of the city to use ordinary care to maintain in proper condition it mains, cut-off and pipes, and it is also the duty of Mann Bros., to use ordinary care to maintain in proper condition their pipes, joints and air chamber. Neither had a right to rely upon the exercise of all care by the other. It is the duty of the city to use ordinary care to maintain its streets in a reasonably safe condition, but it is the duty of those traveling on its streets to exercise ordinary care for their own safety. It is the duty of the master to exercise ordinary

care for the safety of his servant, but it is also the duty of the servant to exercise ordinary care for his own safety. The same rule applies in all departments of life. There was sufficient evidence of negligence on the part of the city to warrant the submission of the question to the jury, but there was also sufficient evidence of negligence on the plaintiffs' part to warrant the submission of that question to the jury. Where the defendant has been negligent and the plaintiff has also been negligent, and by reason of their negligence the plaintiff has suffered a loss, the law does not stop to inquire which was the most negligent; but the general rule is that if the loss would not have happened but for the negligence of the plaintiff, he cannot recover. If the evidence for the city was true, the pounding upon the pipe caused by the defect in the air chamber had produced a leak in the lead joint, and Mann Bros. had been told of the trouble repeatedly, and of the danger of the cellar being flooded from this defect, and had done nothing to prevent the trouble. It is undisputed that the leak occurred in a joint made by them. The city was in no wise responsible for the leak, and the cause of the leak, according to the evidence for the city, was the negligence of Mann Bros. To say that they could allow a four inch pipe to remain in this condition, and recover from the city damages, when the loss would not have occurred but for their own negligence, would be to overrule the well settled principles upon which the law of contributory negligence rests. As the law imposed upon both the parties the duty of using ordinary care, the plaintiffs cannot maintain that the loss was occasioned by the negligence of the city if it would not have occurred but for their own negligence. The water flowed in a continuous stream through the pipes; and the same duty resting on each of the parties to exercise care to maintain in proper condition his part of the system to prevent the escape of the water; the case is not to be distinguished from those involving other like matters, where both parties have been negligent and a loss has ensued.

The single exception to the rule as to contributory negligence is what is known as the doctrine of last clear chance, which is thus stated in Sherman & Redfield on Negligence, Sec. 99:

"The plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the

injury of which he complains was proximately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury."

If the city had failed after notice of the leak to use ordinary care to turn off the water, and avert the danger in which the plaintiffs' negligence had placed them this rule would apply, but this question was submitted to the jury by the instructions of the court.

In addition to this, the instructions were not complained of in the grounds for new trial and cannot be complained of here.

(McLain v. Dibble, 13 Bush, 297, Lawson v. Lightfoot, 27 R., 217.)

Judgment affirmed.