**CITY OF DENTON, Texas, Appellant,**

v.

**Margaret J. GRAY, Appellee.**

**No. 17439.**

Court of Civil Appeals of Texas, Fort Worth.

Oct. 12, 1973.

Rehearing Denied Nov. 16, 1973.

152

W. Ralph Mann, City Atty., and Paul C. Isham, Asst. City Atty., Denton, for appellant.

David C. White, Denton, for appellee.

## OPINION

BREWSTER, Justice.

This was a damage suit brought by Mrs. Margaret J. Gray, the owner of a house, against the City of Denton for damages from flooding allegedly caused to such house by the City's negligence in connection with the furnishing of water service to said house.

A non-jury trial resulted in a judgment for the houseowner for $1,146.65, and the City of Denton has filed this appeal.

We affirm the trial court's judgment.

The record shows that at the time in question the plaintiff had rented the house to a Mr. and Mrs. Sibley. Mrs. Sibley had requested the City to turn on the water service to this rent house, and had also requested Mrs. Gray to ask the City to turn it on, and Mrs. Gray complied with the request. The trial court found that pursuant to Mrs. Gray's request the City did on July 31, 1970, send an employee to the premises in question and he turned the water on. At this time the house was locked and no one was at home. When the City employee turned the water on he could see that the meter hand still turned even after

the water had been on long enough for the commode tank to fill. This employee then circled the house looking into the windows. He could see that the kitchen hydrants were off but could not see the bathroom faucets. He saw in the back of the house a cooling tower connected with air conditioning and water was running into this cooling tower. This tower was equipped with a float which would cut off the water running into the tower when the water got to the proper level there. The City employee assumed that the water that was causing the meter hand to turn was only that going into this water tower and that the meter hand would stop turning when this water tower filled so he went off and left the water on, although at the time he left he knew that the meter hand was then still turning indicating that water was still going through the meter. When someone came to the house the next day it was flooded.

The City argues its first three points together. Its first point is that the court erred in finding as a conclusion of law that the City is legally obligated to establish the practice that before water service could be connected to a residence that (a) someone must be at the residence, or, (b) the house must be unlocked so a City employee can enter and see if there are open faucets or other water leaks, or (c) in the absence of both of the above, the City employee who is connecting the service is to watch the water gauge to see if it stops registering water flowing through the meter after enough water has flowed through the meter to fill the bathroom commodes. If it does not stop registering within such time, then he is to disconnect the water service.

The second point of error is that the court erred in concluding that the failure of the City to follow the practice outlined in the City's first point of error was negligence because such finding imposed on defendant a greater burden than is imposed by law.

The third point of error is that the court erred in concluding as a matter of law that the City's failure to follow the practice referred to above while connecting the water to plaintiff's residence was a proximate cause of the water damage to plaintiff's residence.

We overrule these three points.

The trial court did not find, as is indicated by defendant in its first point, that the City was legally obligated to establish the practice outlined in such point. The trial court found that the City of Denton had itself established a custom or practice in connection with turning on water service to residences and that this custom was as outlined in the City's first point of error. There was sufficient evidence to support this finding.

A city that owns and operates a waterworks system for profit is required by law to exercise ordinary care in the operation of its system. It is subject to the same standard of care as is any other person. It is not an insurer and is not liable for damages resulting from the operation of its system, unless such damages are proximately caused by its negligence. City of Bryan v. Jenkins, 247 S.W.2d 925 (Waco Tex.Civ.App., 1952, ref., n. r. e.).

And the following is from 40 Tex.Jur.2d 448, Negligence, § 6: "Negligence is a failure to observe a legal duty. Moreover, to constitute negligence at all, there must be a violation of a duty owed to the very person claiming on the ground of negligence."

And from § 10 at page 452 of the same text is the following: "Primarily negligence depends on a reason to anticipate injury and a failure to perform the duty arising on account of that anticipation. The foundation of the duty to use due care is knowledge, . . . . The ability to have foreseen and prevented the harm is determinative of responsibility. . . . but liability is determined by what one

should under the circumstances reasonably anticipate as the consequences of his conduct."

In the case of Mann Bros. v. City of Henderson, 154 Ky. 154, 156 S.W. 1063 (Ky.Ct. of App., 1913) the Court held that when the City acquired knowledge that water was flowing from a leak in the customer's pipes it became the City's duty to exercise ordinary care to cut the water off.

There was considerable evidence offered to prove that the City of Denton had established the custom or practice when turning on water to a residence that is outlined in the City's first point of error. The evidence showed that the reason for the practice was because they realized that damage could otherwise result to the customer's property if an open faucet or busted pipe was causing the water to flow through the meter.

The Court made the following as its conclusion of law No. 3: "That the City of Denton was negligent in connecting water service to the said residence and then leaving the water service connected when: (1) There was no one at the residence at the time the water service was connected; and (2) The residence was locked; and (3) There was a float in the air conditioning water tower that would have turned the water off just as a float in a bathroom commode would have done if there had not been any busted water pipes, defective water pipe connections or open faucets if the City of Denton employee would have waited."

In the case of Hubb Diggs Co. v. Bell, 1 S.W.2d 575 (Tex.Com.App., 1928), the Court held that whenever evidence to establish a custom was admissible then proof of conformance with the custom is some proof of due care and proof of nonconformance with it is proof of negligence.

See also to this effect Prosser, "The Law of Torts," Sec. 33, p. 168.

We hold that under the facts proven in this case, as outlined above, the City of Denton owed to Mrs. Gray the duty to exercise ordinary care in the operation of its water system, which included the act of turning the water on and off.

The evidence in the case created a fact issue for the court's determination as to whether or not this duty was breached.

■ The evidence as to the existence of the custom or practice that defendant and its employees had established and followed when turning on water sevice, as is referred to above, was admissible on the question of whether or not the defendant's employees were negligent in leaving the water service on upon the occasion in question under the circumstances then existing.

■ Evidence of the defendant's failure to follow this custom was also admissible on the issue of whether defendant was negligent upon the occasion in question. See the Prosser citation, supra.

■ In its points of error Nos. 4 and 5 the City contends that there is "no evidence" and "insufficient evidence" to support the court's fact finding that there was a float on the air conditioning tower at the house involved that would have stopped the flow of water through the meter just as a float in a bathroom commode would have done.

We overrule both points.

The City employee, Clifford Luster, who was the man that turned the water on, on the occasion in question, testified:

"Q. Did you go and check to see what was causing the water to flow through the pipes?

"A. Yes. I went completely around the house and I found this water cooler tower at the back, and I saw that the water was running into the tower, and I put that down for the reason for the hand to be turning;

it has a float on it—on the water tower back there that's supposed to—when it fills up so high it's supposed to shut off automatically.

"Q. Did you check to see if that float was there?

"A. The float was there, but there was water running into the cooling tower, that's the reason I couldn't find anything else, and I couldn't get into the house, so I took this for the reason for the meter hand to be turning, . . . ."

In its 6th and 7th points of error the City contends that there was no evidence and insufficient evidence to support the court's conclusion of law that the City of Denton was negligent in connecting water service to the residence and then leaving the water service connected when (1) there was no one at the residence at the time; and (2) the residence was locked; and (3) there was a float in the air conditioning water tower that would have turned the water off just as a float in a bathroom commode would have done if there had not been any busted water pipes, defective connections, or open faucets if the City of Denton employee had waited.

We overrule these two points. The acts of negligence found by the court to have been committed by the City's employees were the acts of turning the water on and leaving it on upon the occasion in question.

■ The evidence showed that when the City employee turned the water on and allowed time for the commode to fill that the water meter hand still turned. This showed that water was still flowing through the meter. He could not see the bathroom faucets in the house. It was locked and no one was at home. He found the water tower in the back of the house and found water running into it. He saw the float on the water tower that is there to shut off the water when the water tower is filled up. He did not wait for the water tower to fill and for the float to cut off

the water going into the tower. He simply assumed that the hydrants in the house were closed and that the only place water was running out was into the water tower. He left the water on and then left the premises with the meter showing that water was going through it. The next day when people went into the house it was found to be flooded. The City's custom or practice with reference to turning water service on that is above referred to and what the City did toward following this custom or practice on the occasion were proved up. We hold that there was sufficient evidence to support the court's conclusion that the City's employees were negligent in turning the water on and in leaving it on upon the occasion in question under the circumstances that prevailed at the time.

The City's 8th and 9th points of error are to the effect that there is no evidence and insufficient evidence to support the trial court's finding that the negligence of the City employee was a proximate cause of the resulting water damage.

We overrule these points. For some reason that is not explained in the record the plaintiff failed to offer direct evidence that water ran out of an open faucet in the bathroom and caused the flooding upon the occasion in question. The plaintiff, Mrs. Gray, did testify that the bathroom was the worst flooded where the water had been left on, but this was excluded as hearsay since she did not personally see the water running out of the faucet.

There was considerable circumstantial evidence bearing on the question of whether or not there was a faucet open in the bathroom at the time the City turned the water on that permitted the house to be flooded. This was in part in substance as follows: the plaintiff was in the house two or three days before July 31, 1970, and it was then dry; the house was kept locked; she was next in it at 11:00 A.M. on the day following the day the City turned on the water and it was then flooded; the

flooding was worse in the bathroom than elsewhere; the water had run from this bathroom under the partition and into another bathroom and into a bedroom, living room and den; the cabinet drawers in this bathroom were swelled and were holding water; following this flooding she did not have to have any plumbing work done; she did not then have to have fixed any bursted water lines or defective connections or faucets; and when the water was turned on on July 31, 1970, the meter hand was still turning after time had been allowed for the commodes to fill.

We hold that there was sufficient evidence to support the trial court's finding that the City's negligence was a proximate cause of the damage to the house.

The City's 10th and last point of error was that the court erred in failing to find that the plaintiff was guilty of contributory negligence in failing to inspect her premises for open spigots when the water was connected and that such negligence proximately caused her damage.

■ We overrule the point. The evidence showed that at the time in question Mrs. Gray had rented the premises to the Sibleys and delivered its possession to them; Mrs. Sibley had called Mrs. Gray and asked her to call the City to turn on the water; Mrs. Gray had several rental units and had through operating them become familiar with the City's practice of requiring someone to be at a house before connecting water service to it; she assumed that Mrs. Sibley would be present at the house when the water was turned on and that, if she was not, the City would not turn it on.

The evidence on contributory negligence on the part of Mrs. Gray did no more than raise a fact issue. The trial court found this issue against defendant and there is sufficient evidence to support the finding.

The judgment is affirmed.