MILTON K. FUSSELL AND TERESA FUSSELL, PLAINTIFFS v. NORTH CAROLINA FARM
    BUREAU, MUTUAL INSURANCE COMPANY, INC., PACESETTERS REALTY, INC.
    OF WAKE COUNTY, THE TOWN OF APEX, AND THOMAS COOPER, DEFENDANTS

No. COA08-597

(Filed 4 August 2009)

**Negligence— breach of duty—town employee turned on water
at unoccupied house**

The trial court erred by dismissing under N.C.G.S. § 1A-1,
Rule 12(b)(6) plaintiffs' claim for negligence against defendant
town based on the allegation that a town employee turned on the
water at plaintiffs' house and left the water turned on when the
employee saw that the meter was running and thus should have
known that water was running somewhere in the apparently
unoccupied house, and the case is remanded for further proceed-
ings because: (1) it was reasonably foreseeable that leaving the
water running in an unoccupied house could result in property
damage; and (2) although the Town contends that it did not agree
to inspect the house for proper plumbing or to make sure the
water was running properly, the duty alleged is not the duty to
inspect the house's plumbing, but rather to use ordinary care in
turning the water service back on. However, in the absence of any
allegations by plaintiffs that a special relationship existed
between the Town and plaintiffs, the Town had no duty to protect
plaintiffs from any harmful conduct by the real estate agent that
requested the water services.

Judge BRYANT dissenting.

Appeal by plaintiffs from order entered 6 December 2006 by
Judge Donald W. Stephens in Wake County Superior Court. Heard in
the Court of Appeals 3 December 2008.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for
plaintiffs-appellants.*

*Little & Little, PLLC, by Cathryn M. Little, for defendant-
appellee the Town of Apex.*

GEER, Judge.

Plaintiffs Milton K. and Teresa Fussell appeal from the trial
court's order dismissing their claim for negligence against defendant

the Town of Apex pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Plaintiffs' complaint, when viewed in the light most favorable to plaintiffs, alleges that the Town's employee turned on the water at plaintiffs' house and left the water turned on when the employee could see that water was running somewhere in the apparently unoccupied house. We hold that these allegations sufficiently state a negligence claim because it was reasonably foreseeable that leaving the water running in an unoccupied house could result in property damage. We, therefore, reverse the order dismissing plaintiffs' complaint.

## Facts

Plaintiffs' complaint alleged the following facts. Plaintiffs entered into a contract to purchase a house and adjacent vacant lot in Apex, North Carolina. At that time, the sellers of the property were renting the house to Mary Lois Woodson. Woodson would not vacate the property, and at least once, plaintiffs refused to go forward with the closing of the sale because Woodson had not yet moved out. In order to induce plaintiffs to close, defendant Thomas Cooper, the property's listing agent, provided plaintiffs with a written statement that Woodson would vacate the property by midnight on 23 June 2004. Plaintiffs closed on the property on 24 June 2004.

Woodson, however, remained in the house without plaintiffs' knowledge or consent. Cooper knew she was still living there, and upon Woodson's request, Cooper called the Town on 25 June 2004 and asked that it restore water service to the property, explaining that the tenant needed to get ready for a wedding. The Town sent one of its employees to the home to restore the water service.

When the employee arrived at the house, he knocked on all the doors to the home, but received no answer. The employee nonetheless restored the water service. He saw that the meter was running, but left the property without confirming that anyone was home. In fact, no one was present on the property. A faucet in the upstairs bathtub had, however, been left on and water began flowing through it once the Town's employee restored water service. Since the bathtub drain was plugged, the tub overflowed and water ran through the home for several days before being discovered, causing substantial damage to the property.

On 22 August 2006, plaintiffs filed suit against the Town, North Carolina Farm Bureau Mutual Insurance Company, Inc., Cooper, and

his realty company, Pacesetters Realty, Inc. of North Carolina. All defendants filed Rule 12(b)(6) motions to dismiss the complaint. The trial court granted the motions to dismiss of the Town and Farm Bureau, but denied the motions to dismiss of Pacesetters and Cooper. Although the trial court·denied plaintiffs' motion to certify the orders for immediate appeal under Rule 54(b) of the Rules of Civil Procedure, plaintiffs voluntarily dismissed their claims against Cooper and Pacesetters on 22 February 2008. Plaintiffs then timely appealed the dismissal of their claim against the Town.

<u>Discussion</u>

This Court reviews a trial court's ruling on a motion to dismiss de novo. *Lea v. Grier*, 156 N.C. App. 503, 507, 577 S.E.2d 411, 415 (2003). We must determine " 'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not.' " *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (quoting *Grant Constr. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001)), *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

"In order to avoid dismissal under Rule 12(b)(6), a party must state enough to satisfy the substantive elements of at least some legally recognized claim." *Winters v. Lee*, 115 N.C. App. 692, 694, 446 S.E.2d 123, 124 (internal quotation marks omitted), *disc. review denied*, 338 N.C. 671, 453 S.E.2d 186 (1994). "To withstand a motion to dismiss, plaintiff's negligence complaint must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Sterner v. Penn*, 159 N.C. App. 626, 629, 583 S.E.2d 670, 673 (2003) (internal quotation marks omitted).

Plaintiffs alleged that the Town was negligent in the following respects:

36. Defendant Apex's agents, servants, or employees were negligent in that the agents, servants or employees:

a. Failed to determine whether defendant Cooper had authority to direct that the water be turned on at the Property;

b. Failed to determine the status or condition of the faucets and other plumbing before turning the water on;

c. Failed to determine whether anyone was present in the house before turning the water on; and

d. Failed to take precautions to ensure that no problems would arise when the water was turned on.

37. The negligent acts and omissions described herein were committed by servants, agents or employees of defendant Apex working in the course and scope of their employment or agency; therefore, those negligent acts and omissions are imputed to defendant Apex.

On appeal, the parties dispute whether these factual allegations were sufficient to allege that the Town breached any duty of reasonable care owed plaintiffs.

In *Mosseller v. City of Asheville*, 267 N.C. 104, 106, 147 S.E.2d 558, 560 (1966), the plaintiff slipped on ice that formed when water leaked from the City's water line into the streets and froze. Our Supreme Court first held that a municipal corporation that sells water for private consumption is acting in a proprietary capacity and can be held liable to the same extent as a privately owned water company. *Id.* at 107, 147 S.E.2d at 561. Nevertheless, the Court concluded that the trial court had properly dismissed the action because the plaintiff had not shown that her injury was reasonably foreseeable to the City. *Id.* at 110, 147 S.E.2d at 563.

The Court explained that a municipal corporation

is not an insurer against injury or damage by water leaking from such system. It is liable only if the escape of the water was due to its negligence either as to the initial break in the water line or in its failure to repair or cut off the line so as to stop the flow. The reasonable care which is required of the city when engaged in such operation, like that required of a privately owned water company, includes the exercise of ordinary diligence to discover breaks in its lines and to correct such defects of which it has notice, or which it could have discovered by the exercise of reasonable inspection.

*Id.* at 107, 147 S.E.2d at 561 (internal citation omitted). The Court noted that because no evidence explained how the leak occurred, the plaintiff could recover only by showing that the City "was negligent in its failure to take steps to stop the flow of water after it had actual or constructive notice of the leak." *Id.*

The record indicated that the City had actual notice of a small leak that was causing a small amount of water to flow in the gutter. *Id.* The City did not send anyone to repair the leak until after the plaintiff had fallen. *Id.* at 110, 147 S.E.2d at 563. Nevertheless, the Supreme Court concluded that the possibility that a large volume of water would freeze on the streets and be covered with light snow such that the unsuspecting plaintiff might slip and fall was unforeseeable. Consequently, the Court affirmed the entry of judgment in favor of the City.

In *Graham v. N.C. Butane Gas Co.*, 231 N.C. 680, 685, 58 S.E.2d 757, 761 (1950), our Supreme Court explained that a gas company must "use reasonable care to prevent the escape of gas" in its customers' buildings. *Id.* The Court acknowledged that when the gas company does not own and did not install the gas fixtures in a customer's building, the gas company "is in no way responsible for their condition or for their maintenance," and thus can act on the assumption "in the absence of notice to the contrary[,] that such fixtures are sufficiently secure to permit gas to be introduced into the building with safety." *Id.*

If, however, the gas company "becomes aware that such gas is escaping from the gas fixtures on the premises into the building, it becomes the duty of the gas company to shut off the gas supply until the further escape of gas from the fixtures can be prevented, even though the fixtures do not belong to the company and are not in its charge or custody." *Id.*, 58 S.E.2d at 762. Therefore, "[i]f the gas company continues to transfer gas to the fixtures on the premises after it learns that the gas is escaping therefrom, it does so at its own risk, and becomes liable for any injury proximately resulting from its act in so doing." *Id.*

In applying these principles, the Court noted that the plaintiffs had presented evidence that the defendant was delivering 50 gallons of gas to the plaintiffs' storage tank. *Id.* at 686, 58 S.E.2d at 762. While the defendant's agent was transferring the gas from his tank truck to the storage tank, the agent realized that the gas was escaping through the plaintiffs' gas range into the plaintiffs' kitchen. Rather than shutting off the gas "until the further escape of the gas from the gas range could be prevented, [he] continued to introduce the gas into the house of the plaintiffs until the last of the 50 gallons had been transferred from the tank truck to the storage tank." *Id.* When he entered the kitchen to light the pilot light and prevent further escape of gas, an explosion and fire occurred resulting in the destruction of

the plaintiffs' property. *Id.* The Court concluded that this evidence was sufficient to support a claim of negligence against the gas company. *Id.*

We believe that this case more closely resembles *Graham* than *Mosseller*. In their complaint, plaintiffs alleged that the Town's employee knocked on the doors of the house and did not receive any answer, suggesting that no one was home. The employee nonetheless reconnected the water service to the house. The complaint alleges that the employee saw that the water meter was running, which—viewing the allegations in the light most favorable to plaintiffs—indicated that water was flowing in the house even though no one was present. Despite the potential for water running in the house with no one present, the Town's employee left without disconnecting the water. We cannot hold, at the motion to dismiss stage, that it would be unforeseeable to the Town employee that leaving water flowing in an unoccupied house could cause property damage. Consequently, plaintiffs' allegations were sufficient to allege a duty on the part of the Town to turn the water back off to avoid water damage in the house.

The Texas Court of Civil Appeals reached an identical conclusion in *City of Denton v. Gray*, 501 S.W.2d 151 (Tex. Ct. Civ. App. 1973). In *Gray*, the City received a request to turn the water on at a rental house and sent an employee out to the premises. When he arrived, the house was locked and no one was home, but the employee still turned the water on. Subsequently, he noticed that the water meter was running, indicating that water was running somewhere inside the house. He did not, however, disconnect the water service, but rather simply left. The house subsequently flooded because of an open faucet, and the plaintiffs brought suit against the City for negligence. *Id.* at 155.

As in this State, a City in Texas "that owns and operates a waterworks system for profit is required by law to exercise ordinary care in the operation of its system." *Id.* at 153. This duty includes the duty of the City to a homeowner "to exercise ordinary care in . . . the act of turning the water on and off." *Id.* at 154. The court concluded that the evidence presented by the plaintiffs was sufficient "to support the court's conclusion that the City's employees were negligent in turning the water on and in leaving it on upon the occasion in question under the circumstances that prevailed at the time." *Id.* at 155.

Defendants, however, rely on *Lambeth v. Media Gen., Inc.*, 167 N.C. App. 350, 351, 605 S.E.2d 165, 166-67 (2004), in arguing that the

City had no duty to make sure the plumbing of plaintiffs' house was working properly before turning on the water. In *Lambeth*, the plaintiffs contacted their newspaper delivery service and requested that their home delivery be stopped while they were out of town to "reduce the appearance that their home was vacant." *Id.*, 605 S.E.2d at 167. A newspaper employee left the request at the newspaper carrier's drop off location in a manner that allowed someone passing by to read it and learn that the plaintiffs had requested that delivery be stopped. As a result, the plaintiffs' house was targeted for a robbery while they were out of town. *Id.* The plaintiffs sued the newspaper for negligence, alleging that the newspaper should have ensured that the stop-delivery notice was kept confidential. *Id.* at 351-52, 605 S.E.2d at 167.

On appeal of the dismissal of their claims, this Court affirmed, holding that the plaintiffs had not sufficiently alleged that the newspaper had a duty of reasonable care to keep secret the information about their absence from their home. *Id.* at 353, 605 S.E.2d at 168. The Court explained that although the newspaper did have a duty to use ordinary care in delivering the newspapers and in stopping that delivery upon request, that duty was not breached. *Id.* The plaintiffs were alleging instead that the newspaper had a separate duty to keep secret their request to stop delivery. The Court explained that "[p]laintiffs cite no authority for the proposition that Media General owed a further legal duty to plaintiffs to treat the 'stop delivery' request in confidence, and we decline to invent one." *Id.*

Here, the Town contends that it did not agree to inspect the house for proper plumbing or to make sure the water was running properly. This argument, however, misstates the duty alleged by plaintiffs. The duty alleged is not the duty to inspect the house's plumbing, but rather to use ordinary care in turning the water service back on. Because the complaint alleges the meter was running, indicating water was flowing in the house when no one was present, the complaint adequately alleges a breach of the duty to use ordinary care in turning on the water.

Plaintiffs also argue that the Town was negligent in failing to ensure that Cooper had authority to request that water services be provided to plaintiffs' home. The complaint alleges that Cooper was a real estate agent licensed in North Carolina and that he told the Town that a tenant on the property needed water services. Plaintiffs, however, cite no authority suggesting that there is a duty to investigate the authority of someone requesting municipal services.

Moreover, plaintiffs' complaint contains no allegation that the Town knew or should have known that Cooper, who told the Town he was the property's listing agent, lacked such authority.

"In general, there is no duty to prevent harm to another by the conduct of a third person." *Hedrick v. Rains*, 121 N.C. App. 466, 469, 466 S.E.2d 281, 283, *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996). There is, however, an exception to the general rule "where there is a special relationship between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or a special relationship between the defendant and the injured party which gives the injured party a right to protection." *Id.* at 469, 466 S.E.2d at 283-84 (internal citations omitted). In the absence of any allegations by plaintiffs that such a special relationship existed between the Town and plaintiffs, the Town had no duty to protect them from any harmful conduct by Cooper.

In sum, because plaintiffs' complaint contains sufficient allegations that the Town owed plaintiffs a duty to use ordinary care in restoring water service to their property, we reverse the trial court's order dismissing their claim and remand for further proceedings. We find plaintiffs' remaining arguments, however, unpersuasive.

Reversed.

Judge McGEE concurs.

Judge BRYANT dissents in a separate opinion.

BRYANT, Judge dissenting.

The majority reverses the trial court's judgment dismissing plaintiff's negligence claim against the Town of Apex, holding that plaintiff's allegations are sufficient to state a claim of negligence. Because I am unable to find any North Carolina case law that would expand a water company's duty of reasonable care to require that it shut off the water supply to a building if, after turning the water supply on, an employee notices that the meter is running, I respectfully dissent.

As stated by the majority, plaintiff's negligence complaint must allege, among other things, the existence of a legal duty or standard of care owed to the plaintiff by the defendant in order to withstand a motion to dismiss. *Sterner v. Penn*, 159 N.C. App. 626, 629, 583 S.E.2d 670, 673 (2003). However, the majority's reliance upon *City of Denton*

*v. Gray*, 501 S.W.2d 151 (Tex. Civ. App. 1973) to establish the existence of defendant's legal duty to shut off the water supply to plaintiff's home is misplaced. Although *Denton* does involve facts substantially similar to the present case (the water company was owned and operated by the city; the city was asked to turn the water to plaintiff's house on; when the city employee turned the water on, he noticed the water meter was running, indicating water was running in the home; the employee did not turn the water off, but left the water running; the home was subsequently flooded), the Texas Court's holding was based primarily on substantial evidence that the City had established "a custom or practice in connection with turning on water service to residences" that

> (a) someone must be at the residence, or, (b) the house must be unlocked so a City employee can enter and see if there are open faucets or other water leaks, or (c) in the absence of both of the above, the City employee who is connecting the service is to watch the water gauge to see if it stops registering water flowing through the meter after enough water has flowed through the meter to fill the bathroom commodes. If it does not stop registering within such time, then he is to disconnect the water service.

*Id.* at 152. This custom or practice was evidence of a standard of care, and the facts show that the City had not complied with the standard of care when turning the water on to the plaintiff's house. The Texas Court affirmed the judgment against the City and concluded that the evidence of the City's custom "was admissible" and "proof of conformance with the custom is some proof of due care and proof of nonconformance with it is proof of negligence." *Id.* at 154.

In the present case, there is no evidence that the Town of Apex has established a custom that requires someone to be home, or an employee to check the home to ensure that no spigots were left running, or to turn off the water if the water meter is running when the water supply is being turned on. In the absence of evidence of such custom and in the absence of a legal duty to shut off the water, plaintiff's claim must fail.

The majority also cites to *Graham v. N.C. Gas Co.*, 231 N.C. 680, 685, 58 S.E.2d 757, 761 (1950), in support of its holding that plaintiff's complaint stated a sufficient claim for negligence. However, *Graham* is distinguishable from the present case. In *Graham*, a gas company was held to have breached its duty of care when an employee failed to shut off the gas supply to a house after he realized the meter was

running and gas was being released into the home. Our Supreme Court noted that North Carolina law recognizes that gas is a very dangerous substance and due to its nature, a gas company's duty of reasonable care requires that if an employee

> becomes aware that such gas is escaping from the gas fixtures on the premises into the building, it becomes the duty of the gas company to shut off the gas supply until the further escape of gas from the fixtures can be prevented, even though the fixtures do not belong to the company and are not in its charge or custody. If the gas company continues to transfer gas to the fixtures on the premises after it learns that the gas is escaping therefrom, it does so at its own risk, and becomes liable for any injury proximately resulting from its act in so doing.

*Id.* at 685, 58 S.E.2d at 762 (1950).

Because no North Carolina case law expands a water company's duty of care to require the water company to ensure that after the water supply to a building has been turned on, the water is not running in the building or, if the water is running, someone is present in the building, plaintiff has not alleged the existence of trial court should be affirmed.