GREGORY S. SCADDEN, Plaintiff v. ROBERT HOLT, Individually, ROBERT HOLT, in his official capacity, and the TOWN OF NEWPORT, Defendants

No. COA12-303

(Filed 18 September 2012)

**Negligence—respondeat superior—no duty to control actions of third party**

    The trial court did not err by granting defendants' N.C.G.S. § 1A-1, Rule 12(b)(6) motion to dismiss plaintiff's negligence claim under the theory of *respondeat superior*. The facts alleged in the complaint were inadequate to impose a legal duty on defendant Holt, an EMT, because they failed to establish both that defendant had a right to control the patient and that he had the requisite knowledge of the patient's dangerousness.

Appeal by plaintiff from order entered 2 November 2011 by Judge Arnold O. Jones, II, in Superior Court, Carteret County. Heard in the Court of Appeals 27 August 2012.

*Riddle and Brantley, LLP, by Donald J. Dunn, for plaintiff-appellant.*

*Cranfill Sumner and Hartzog LLP, by Christopher M. Hinnant, Angela W. Dinoto, and Carolyn C. Pratt, for defendants-appellees.*

STROUD, Judge.

## I. Factual Background

On 29 April 2011, Gregory Scadden ("plaintiff") filed a complaint against Robert Holt, both individually and in his official capacity as an emergency medical service provider working for the Town of

SCADDEN v. HOLT

[222 N.C. App. 799 (2012)]

Newport, as well as against the Town of Newport itself ("defendants"). The following facts were alleged in the complaint:

> On May 2, 2008, plaintiff was a deputy sheriff employed with the Carteret County Sheriff's Department and was on duty and on patrol in his sheriff's vehicle when he received a dispatch call to assist EMS [Emergency Medical Services] at the home of an individual[.] . . . Dispatch had advised plaintiff when making the call that the patient was combative and uncooperative. When plaintiff arrived on the scene [defendant] Holt and two EMS attendants, along with another deputy sheriff, had loaded the patient and stretcher into the Town of Newport EMS vehicle. Plaintiff walked up to the ambulance and stepped up into the back of the vehicle at the foot of the stretcher. The patient was agitated and unruly, so plaintiff advised the other deputy to handcuff the patient's arms to allow EMS to start an IV on the patient. When plaintiff ordered the deputy to handcuff the patient, the patient attempted to kick plaintiff from the patient's prone position on the stretcher. Plaintiff, to protect himself from the kick, extended his arms and bent over quickly to block the kick and pin patient's legs to the stretcher. While restraining the patient's legs, plaintiff noticed that the patient's legs had not been strapped or restrained in any way prior to this event. After securing the patient's legs and as plaintiff straightened up, he felt a sharp, pinching pain in his lower back. From this event plaintiff suffered a severe and permanent low back injury.

Plaintiff claims that the above facts show that defendant Holt was negligent in failing to properly restrain the patient. Plaintiff's only claims against the Town of Newport arise through *respondeat superior* from the alleged negligence of defendant Holt. Plaintiff also raised an uninsured motorist claim in his complaint.

On 27 June 2011, defendants filed a motion to dismiss in their answer on the basis of the complaint's alleged violation of Rule 9(j) of N.C. Gen. Stat. § 1A-1 and under Rule 12(b)(6) for failing to state a claim. The trial court granted defendants' motion to dismiss by a written order entered 2 November 2011. Plaintiff timely filed written notice of appeal from the trial court's order on 28 November 2011.

## II.  Standard of Review

Plaintiff's only argument on appeal is that the trial court erred in granting defendants' 12(b)(6) motion to dismiss. *See* N.C. Gen. Stat.

§ 1A-1, Rule 12(b)(6).   A 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *Lambeth v. Media General, Inc.*, 167 N.C. App. 350, 352, 605 S.E.2d 165, 167 (2004) (citations and quotation marks omitted).

> On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.

*Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000) (citation and quotation marks omitted).

### III.  12(b)(6) Motion to Dismiss

Plaintiff appeals from the trial court's order entered 2 November 2011 granting defendants' motion to dismiss. Plaintiff argues that the trial court erred by dismissing his complaint because defendant Holt owed plaintiff a legal duty to control his patient and prevent him from kicking plaintiff.[1] For the following reasons, we affirm the trial court's order.

### A.  Third-Party Tortfeasor Standard

For a common law negligence complaint "[t]o withstand a motion to dismiss . . . [it] must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Lambeth*, 167 N.C. App. at 352, 605 S.E.2d at 167. If the facts as alleged by the plaintiff, taken as true, are insufficient to establish that the defendant owed the plaintiff a legal duty or standard of care, the complaint must be dismissed. *See id.*

---

1. Plaintiff does not raise the issue of his uninsured motorist claim on appeal. That issue is therefore abandoned. N.C.R. App. P. 26 (b)(6). Plaintiff's claims against defendant Holt, in his individual capacity and in his official capacity, and against the Town of Newport all arise from the same alleged duty that defendant Holt owed plaintiff. Plaintiff's argument that the trial court erred in determining defendant owed no duty to plaintiff therefore preserves all three remaining claims.

In general, there is neither a duty to control the actions of a third party, nor to protect another from a third party. *King v. Durham County Mental Health Developmental Disabilities and Substance Abuse Authority,* 113 N.C. App. 341, 345, 439 S.E.2d 771, 774 (1994), *disc. rev., denied* 336 N.C. 316, 445 S.E.2d 396 (1994). However,

> [a]n exception to the general rule exists where there is a special relationship between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct; or a special relationship between the defendant and the injured party which gives the injured party a right to protection.

*Hedrick v. Rains,* 121 N.C. App. 466, 469, 466 S.E.2d 281, 283-84, *aff'd per curiam,* 344 N.C. 729, 477 S.E.2d 171 (1996) (quotation marks omitted),

> Some examples of such recognized special relationships include: (1) parent-child, (2) master-servant, (3) landowner-licensee, (4) custodian-prisoner, and (5) institution-involuntarily committed mental patient.

*King,* 113 N.C. App. at 346, 439 S.E.2d at 774 (citations and quotation marks omitted).[2] These are not the only special relationships which have been held to create a duty of protection or control. *See, e.g. Smith v. Camel Cab Co.,* 227 N.C. 572, 574, 42 S.E.2d 657, 658-59 (1947) (holding that a common carrier can be liable for a third-party assault where the injury was reasonably foreseeable and within the scope of the special relationship, i.e. in transit). Rather, where the

---

2. There must be some relationship between either defendant and plaintiff, or defendant and the tortfeasor to justify imposition of a duty as to third parties. The same relationship can be found in some circumstances to impose a duty to control a third party, and in others it can be found to impose a duty to protect the injured party from third parties. *Compare Pangburn,* 73 N.C. App. at 338, 326 S.E.2d at 367 (holding that a mental institution has a duty to control its involuntarily committed patients), *and Moore v. Crumpton,* 55 N.C. App. 398, 406-07, 285 S.E.2d 842, 846-47 (1982) (discussing a parent's duty to control children), *with Thornton v. F.J. Cherry Hospital,* 183 N.C. App. 177, 182, 644 S.E.2d 369, 374 (2007) (observing that a "hospital, much like the proprietor of any public facility, owes a duty to its invitees to protect the patient against foreseeable assaults by another patient." (citation and quotation marks omitted)), *and Coleman v. Cooper,* 89 N.C. App. 188, 198, 366 S.E.2d 2, 8-9 (1988) (holding that parents owe a duty to protect their children from harm), *overruled in part by Hunt By and Through Hasty v. North Carolina Dept. of Labor,* 348 N.C. 192, 198, 499 S.E.2d 747, 750 (1998) (holding that the special relationship exception does not apply to the public duty doctrine). Which duty the relationship may impose depends on whether the defendant was party to a special relationship with the tortfeasor or the injured party.

underlying justification for imposing a duty to protect or control applies, a court may find that a special relationship exists.[3]

A finding that a special relationship exists and imposes a duty to control is justified where "(1) the defendant knows or should know of the third person's violent propensities *and* (2) the defendant has the ability and opportunity to control the third person at the time of the third person's criminal acts." *Stein v. Asheville City Bd. Of Educ.*, 360 N.C. 321, 330, 626 S.E.2d 263, 269 (2006) (emphasis added). The ability and opportunity to control must be more than mere physical ability to control. Rather, it must rise to the level of custody, or legal right to control. *Compare Pangburn v. Saad*, 73 N.C. App. 336, 338, 326 S.E.2d 365, 367 (1985) (holding that defendant psychiatrist owed duty not to release dangerous, *involuntarily* committed patient), *and Gregory v. Kilbride*, 150 N.C. App. 601, 606, 565 S.E.2d 685, 690 (2002) ("an independent duty arises to protect third persons from harm by the release of a mental patient who is *involuntarily* committed." (emphasis added and citation omitted)), *disc. rev. denied*, 357 N.C. 164, 580 S.E.2d 365 (2003), *with King*, 113 N.C. App. at 347, 439 S.E.2d at 775 (finding no duty where defendant institution had "no legal right" to control third-party tortfeasor, who was in defend-ant's institution not subject to any court order). Were the law otherwise, the exception would swallow the rule and any person could be held liable for the foreseeable, harmful acts of another person in physical proximity.

Plaintiff, citing *Stein v. Asheville City Bd. Of Educ.*, 360 N.C. 321, 626 S.E.2d 263, argues that the correct test for determining legal duty in this context is whether the harm was foreseeable "under all of the circumstances." We disagree.

In *Stein*, the plaintiffs were injured when two students at a school for "behaviorally and emotionally handicapped children" who were known to have violent tendencies opened fire at vehicles passing by an intersection in Asheville. 360 N.C. at 323-24, 626 S.E.2d at 265. The plaintiffs sued the Blue Ridge Area Authority, a governmental subdivision operating the school, for failing to prevent their injuries, alleging that a school employee overheard the students discussing their violent plans on the school bus and failed to take any

---

3. In the case *sub judice* the issue of a special relationship between plaintiff and defendant was never raised at the hearing on defendant's motion or on appeal, therefore we will only discuss the duty to control a third party. *See Hedrick*, 121 N.C. App. at 469, 466 S.E.2d at 283-84 (describing the two categories of special relationships); N.C.R. App. P. 10(a).

preventive measures. *Id.*, 626 S.E.2d at 264-65. The trial court in *Stein* granted the defendant's motion to dismiss, which a divided panel of the Court of Appeals reversed. *Id.* at 325, 626 S.E.2d at 265. The Blue Ridge Area Authority then appealed to the North Carolina Supreme Court. *Id.*

The Supreme Court reversed the Court of Appeals, holding that because the school employees could exercise no control over the students after they exited the bus, the school board could not be held liable for their actions. *Id.* at 332, 626 S.E.2d at 270..Contrary to the plaintiff's argument, the Supreme Court reasoned that the trial court properly dismissed the complaint because the plaintiffs "fail[ed] to allege the special relationship *necessary* to render defendant liable for the harm to plaintiffs by third persons." *Id.* (emphasis added).

The portion of the Court's opinion that plaintiff cites in his brief is inapposite to this case. Plaintiff quotes *Stein* for the proposition that "[n]o legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care." *Id.* at 328, 626 S.E.2d at 267. Of course, this statement is an accurate reflection of the general law on duty in a negligence action. Reasonable foreseeability would also be the correct test for proximate cause, were a special relationship found. *See, e.g., Smith,* 227 N.C. at 574, 42 S.E.2d at 658-59 (holding that a common carrier can be liable for a third-party assault where the injury was reasonably foreseeable and within the scope of the special relationship, i.e. in transit). It is not, however, the proper standard to determine whether defendant owed plaintiff a legal duty to control a third party.

As explained in *Stein,* the proper standard for whether the defendant owes a duty to control the actions of a third party is whether the relationship between the defendant and the third party is such that "(1) the defendant knows or should know of the third person's violent propensities and (2) the defendant has the ability and opportunity to control the third person at the time of the third person's criminal acts."[4] *Stein,* 360 N.C. at 330, 626 S.E.2d at 269; *accord Harris,* 180 N.C. App. at 556, 638 S.E.2d at 265 (observing that "the chief factors justifying imposition of liability are 1) the ability to control the person and 2) knowledge of the person's propensity for violence" (emphasis, quotation marks, and citations omitted)). *Stein* also notes

---

4. Although *Stein* refers to "criminal acts", this test applies equally to third-party non-criminal torts. *See, e.g., Harris v. Daimler Chrysler Corp.,* 180 N.C. App. 551, 555-56, 638 S.E.2d 260, 265 (2006) (applying the third party duty standards to tortfeasors).

SCADDEN v. HOLT

[222 N.C. App. 799 (2012)]

that "[w]e have often remarked the law's reluctance to burden individuals or organizations with a duty to prevent the criminal acts of others." 360 N.C. at 328, 626 S.E.2d at 268 (citation omitted).

B. Analysis

Applying the above standard to the case *sub judice*, we hold that the trial court did not err in granting defendant's 12(b)(6) motion to dismiss. The question is whether, interpreted liberally, plaintiff alleged sufficient facts in his complaint, which if taken as true could establish a *prima facie* negligence case, including a "legal duty . . . owed to the plaintiff." *Lambeth*, 167 N.C. App. at 352, 605 S.E.2d at 167. Since it is not alleged that defendant directly caused plaintiff's injury, but that he negligently failed to control his patient, we must consider this case under the third-party tortfeasor rules outlined above. Thus, we must decide whether, presuming the facts in the complaint are true, a special relationship existed between defendant and his patient sufficient to justify imposition of a duty to control. *See Fussel v. North Carolina Farm Bureau*, 198 N.C. App. 560, 567, 680 S.E.2d 229, 233-34 (2009), *aff'd*, 364 N.C. 222, 695 S.E.2d 437 (2010). In the absence of any allegations by plaintiff that might establish such a special relationship existed between defendant and the patient, defendant owed no legal duty to plaintiff to control the patient's actions. *See id.*, 680 S.E.2d at 234.

Here, plaintiff failed to allege sufficient facts to establish that defendants had a legal duty to plaintiff. We find that the facts alleged in the complaint are inadequate to impose a legal duty on defendant Holt because they fail to establish both that defendant had a right to control the patient and that he had the requisite knowledge of the patient's dangerousness. *See Stein*, 360 N.C. at 330, 626 S.E.2d at 269.

First, the facts as alleged do not show that defendant had the sort of legal right to control his patient that is required for a special relationship. *See King*, 113 N.C. App. at 347, 439 S.E.2d at 775. While defendant Holt may have had some measure of physical control over his patient, he had no legal right to control the patient's actions. This case is quite different from the five widely-accepted categories of special relationships. *See King*, 113 N.C. App. at 346, 439 S.E.2d at 774 (listing five of the recognized special relationships). The level and nature of control that a mental hospital can exercise over those involuntarily in its care or that a parent can exercise over a child is far greater than the control exercised by an Emergency Medical Technician (EMT) over a patient. Like a psychiatric institution with a voluntarily committed patient, defendant Holt "had no legal right to

mandate" his patient's behavior. *King*, 113 N.C. App. at 347, 439 S.E.2d at 775. Plaintiff cites no case, and we find none, holding that an EMT has the kind of legal right to exercise control over his patient to justify imposing a duty to control his patient's actions.[5]

Further, the facts as alleged in plaintiff's complaint do not show that defendant knew or should have known of the patient's violent disposition. The complaint alleges that the police dispatcher warned plaintiff that the patient was being "combative and uncooperative", but never alleges that *defendant* had any foreknowledge of the patient's disposition to violence.[6] Plaintiff contends that the call to the police dispatcher supports the inference that defendant was or should have been aware that the patient was violent. However, to reach that conclusion would require one of two unsupported assumptions: (1) that defendant was the only EMT caring for the patient and thus the only one who could have informed the dispatcher of his "violent and combative" behavior—a fact which is belied by the complaint as it alleges that defendant was one of three EMS personnel caring for the patient at the time of plaintiff's arrival; or (2) that some other person who had had contact with the patient informed defendant prior to plaintiff's arrival of the patient's dangerous behavior. Thus, even construed liberally, the facts as alleged are insufficient to support an inference that defendant was or should have been aware of his patient's violent tendencies. We hold that under the facts of this case, defendant Holt was not party to any special relationship with the tortfeasor-patient. Therefore, defendant did not, as a matter of law, owe plaintiff Scadden any legal duty and the trial court did not err in granting defendants' motion to dismiss.

AFFIRMED.

Chief Judge MARTIN and Judge GEER concur.

5. Plaintiff does claim that this Court has held that "an EMT may be held personally liable for any harm caused by his negligence," citing *Fraley v. Griffin*, _____ N.C. App. _____ , 720 S.E.2d 694 (2011). However, *Fraley* only holds that an EMT is in a ministerial position for purposes of public official immunity and therefore not immune from suit. *Id.* at _____ , 720 S.E.2d at 697. This Court did not consider the question of to whom EMTs owe a legal duty.

6. In fact, the allegations of plaintiff's complaint have more of a tendency to show plaintiff's contributory negligence than the defendant's knowledge. Plaintiff, a law enforcement officer, had been forewarned that the patient was "combative and uncooperative" but he still stood within close proximity to the patient's feet without checking to see if they were restrained, even after he had directed another officer to restrain the patient's arms with handcuffs.