

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00451-CV

———————————————

IN THE ESTATE OF JORGE GOMEZ-GUZMAN, DECEASED

On Appeal from Probate Court No. 1
Tarrant County, Texas
Trial Court No. 2022-PR00035-1

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellants Jorge Gomez (Father) and Guadalupe Guzman (Mother) appeal from the probate court's judgment finding, among other things, that their son Jorge Gomez-Guzman was informally married to Allie Roman at the time of his death. In two issues, Appellants complain that (1) the evidence is factually insufficient to support the probate court's finding that Allie and Jorge were informally married and (2) the probate court erred by failing to establish the date on which the informal marriage began. We will affirm.

## I. BACKGROUND

Allie and Jorge met and began dating in August 2012. Allie testified that on December 26, 2013, the two of them exchanged watches in her parents' driveway and "discussed that . . . moving forward, [they were] one." According to Allie, "[i]t wasn't boyfriend/girlfriend anymore" as of that date; they considered themselves to be husband and wife. Allie recalled that from then on, she—without ever being corrected—openly referred to Jorge as her spouse and referred to the members of Jorge's family, including Father and Mother, as her in-laws.

Allie testified that because of their financial situation, she and Jorge moved back and forth between Allie's family's house and Jorge's family's house from 2014 to 2015 and then "permanently" lived at Allie's parents' "home on Gould" until 2019

when they could finally afford to purchase a home of their own.[1] In June 2019, Jorge and Allie purchased their own home, and they began living there together a couple of weeks later.

Allie related that even though she and Jorge considered themselves to be married as of December 26, 2013, they had discussed having a ranch wedding ceremony. But because it might take them a long time to save up enough money for a ranch wedding, they had also discussed having a simple civil ceremony at the courthouse to ensure that at least one of their grandparents could be there to witness it. In August 2019, Jorge got down on one knee and presented Allie with a ring during a big party at their new house. Allie understood this to mean that it was time for them to start planning their wedding ceremony, which they expected to take place approximately five years from the date Jorge proposed.

But before the couple could have their planned wedding ceremony, Jorge was tragically electrocuted while repairing a streetlight for the City of Fort Worth. He died on October 2, 2021.[2]

In February 2022, Allie filed her first amended application to determine heirship in which she claimed that she was Jorge's spouse and was therefore entitled

---

[1]Appellants presented evidence, including Mother's testimony, showing that Jorge never lived with Allie's family and that he resided at his family's home until June 2019 when he and Allie purchased their home together.

[2]The record reflects that Jorge died without a will.

to all of Jorge's community property and separate personal property and to half of his separate real property. Appellants filed a counter-application in which they asserted that Allie and Jorge had never been married and that Appellants were Jorge's true and rightful heirs, with Mother and Father each entitled to receive one half of Jorge's estate.

In April 2023, the probate court held an evidentiary hearing to resolve the central dispute raised by the competing heirship applications—whether Jorge and Allie had been informally married at the time of Jorge's death. Following the hearing, the probate court signed a judgment finding that Jorge had been informally married to Allie at the time of his death. Per Appellants' request, the probate court subsequently filed findings of fact and conclusions of law. This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In their first issue, Appellants argue that the evidence is factually insufficient to support the probate court's finding that Jorge and Allie were informally married. We disagree.

#### 1. Standard of Review

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that

4

the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If reversing for factual insufficiency, we must detail the evidence relevant to the issue in consideration and clearly state why the finding is factually insufficient—that is, why the evidence supporting the finding is so weak or is so against the great weight and preponderance of the evidence that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Pool*, 715 S.W.2d at 635.

When conducting a factual-sufficiency review, we do not substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.*

### 2. Applicable Law

"In Texas, an informal marriage can be proved by evidence establishing three elements: (1) the couple agreed to be married; (2) after the agreement, they lived together in Texas as spouses; and (3) they represented to others that they were married." *Luna v. Garcia*, No. 02-23-00209-CV, 2023 WL 7400927, at *4 (Tex. App.—Fort Worth Nov. 9, 2023, pet. denied) (mem. op.) (first citing Tex. Fam. Code Ann. § 2.401(a)(2); and then citing *Nguyen v. Nguyen*, 355 S.W.3d 82, 88–89 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)). The existence of an informal marriage is a fact question, and the party seeking to establish the marriage's existence bears the burden

5

of proving the elements by an evidentiary preponderance. *Small v. McMaster*, 352 S.W.3d 280, 282–83 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). An informal marriage does not exist until the concurrence of all required elements. *Id.* at 283.

Because Appellants challenge the sufficiency of the evidence establishing each element, we address each element in turn.

### 3. Analysis

*First*, Allie was required to prove that she and Jorge agreed to be married. *See* Tex. Fam. Code Ann. § 2.401(a)(2). To establish an agreement to be married, "the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Garcia v. Garcia*, No. 02-11-00276-CV, 2012 WL 3115763, at *3 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (mem. op.) (quoting *Small*, 352 S.W.3d at 283). An agreement to be married may be established by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993); *Small*, 352 S.W.3d at 283. "The testimony of one of the parties to the marriage constitutes some direct evidence that the parties agreed to be married." *Small*, 352 S.W.3d at 283 (citing *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)). An agreement to be married may be inferred from cohabitation and the parties' representations. *Eris*, 39 S.W.3d at 714. Such an agreement may also be inferred from evidence showing that the parties filed joint income-tax returns, opened joint bank accounts, jointly purchased property, or

executed secured transactions together. *See Osojie v. Osojie*, No. 03-08-00688-CV, 2009 WL 2902743, at *5 (Tex. App.—Austin Aug. 27, 2009, no pet.) (mem. op.) (noting that circumstantial evidence of agreement to be married included marriage proponent's testimony that the parties had "filed joint tax returns, opened bank accounts, and purchased property as husband and wife"); *Rodriguez v. Avalos*, 567 S.W.2d 85, 86–87 (Tex. App.—El Paso 1978, no writ) (identifying "a contract of sale covering the purchase of [the parties'] home . . . , applications for credit, a financial statement, a credit insurance policy, a burial insurance policy, various promissory notes, security agreements, and income[-]tax returns" that referred to the parties as husband and wife as evidence supporting the existence of an informal marriage); *Day v. Day*, 421 S.W.2d 703, 705 (Tex. App.—Austin 1967, no writ) (holding that joint income-tax return was admissible evidence regarding existence of informal marriage).

Here, Allie testified that on December 26, 2013, after exchanging watches in her parents' driveway, she and Jorge agreed to be married.[3] Allie recalled that from

---

[3]Although Appellants contend that "there was no direct evidence of an agreement to be married," Allie's testimony constitutes some direct evidence of such an agreement. *See Small*, 352 S.W.3d at 283. Allie's testimony distinguishes this case from *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App.—Texarkana 2013, no pet.), the principal case upon which Appellants rely in contending that the evidence is factually insufficient to show that Allie and Jorge agreed to be married. In *Burden*, unlike the present case, the marriage proponent did not testify that the parties had agreed to be married after they had divorced; rather, "[a]t most," she testified that her purported husband had said that "the divorce 'meant nothing' and 'everything would be the same.'" *Id.*

7

that day on, she referred to Jorge as her spouse and to the members of his family as her in-laws and that Jorge's family members never corrected her when she made these references in their presence.[4] She also testified that she and Jorge began living together in 2014, first at their parents' houses and then in their own house that they purchased together in June 2019.

When Allie and Jorge purchased their home, both the warranty deed and the deed of trust securing their mortgage described them as "a married couple." In addition, Allie and Jorge had a joint bank account; filed joint tax returns for 2018, 2019, and 2020; and had a joint insurance policy on their vehicles listing each of them as a "married driver." Further, when they refinanced their mortgage in March 2021, Allie and Jorge each signed a "Marital Status Affidavit" averring under oath that they had been continuously married to each other since 2013.

Turning to the contrary evidence, Allie admitted on cross-examination that when she and Jorge agreed to be married on December 26, 2013, they did not immediately tell either of their parents. Although Allie claimed that she had immediately told her brother-in-law and her sister—who were at her parents' house at the time—about the marriage agreement, neither of them testified at trial to corroborate Allie's account. Indeed, Allie did not produce any witnesses who could

---

[4]Jorge's sisters testified that it was their family's practice to begin referring to family members' significant others as "in-laws" once they became engaged and that they used these familial terms "very loosely."

corroborate her testimony that December 26, 2013, was the date on which she and Jorge had agreed to be married. Further, Jorge's paystubs from the City of Fort Worth reflected his marital status as "single" from his hire date in August 2016 until January 2020.[5]

In addition, the fact that Jorge got down on one knee and gave Allie a ring in August 2019 could be considered evidence that he did not believe that they were already married. But, as noted, Allie explained that even though she and Jorge already considered themselves to be married, they still wanted to have a wedding ceremony but had been unable to do so for financial reasons. She understood Jorge's "proposal" to mean that it was time for them to start planning the ceremony.

Although there was conflicting evidence about whether the couple had agreed to be married, the probate court was the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Golden Eagle Archery*, 116 S.W.3d at 761. We thus hold that the credible evidence supporting the probate court's determination that the parties had agreed to be married was not so weak that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Pool*, 715 S.W.2d at 635.

*Second*, Allie was required to prove that after agreeing to be married, the couple lived together in Texas as spouses. *See* Tex. Fam. Code Ann. § 2.401(a)(2). Appellants

---

[5]Jorge's February 2020 paystubs reflected his marital status as "exempt." Beginning in March 2020, the vast majority of his paystubs listed his marital status as "married," and a few stated that he was "exempt." But after January 2020, none of Jorge's paystubs reflected that he was single.

concede that Allie and Jorge lived together from the time that they purchased their house in 2019 until Jorge's death in 2021. Because the informal-marriage statute requires proof only that the couple lived together "after the agreement" to be married, this concession appears to satisfy the statutory cohabitation requirement. *See id.* But, citing *Winfield v. Renfro*, 821 S.W.2d 640, 646 (Tex. App.—Houston [1st Dist.] 1991, writ denied), Appellants argue that to satisfy the informal-marriage statute's cohabitation requirement, the parties must live together within four months after their agreement to be married. Appellants' reliance on *Winfield* for this proposition is misplaced.

Unlike the present case, *Winfield* involved a jury trial, and the court of appeals acknowledged that its factual-sufficiency analysis was "limited by the date in the jury question, which asked the jury to decide if the parties [had] entered [an informal] marriage on or about April 11, 1982." *Id.* Because the jury question asked whether the parties had entered into an informal marriage "on or about" a specific date, the *Winfield* court had to decide what degree of variance between the jury question and the proof was acceptable. *Id.* at 646–47. Ultimately, the court decided that the evidence would be factually sufficient to support the statutory cohabitation requirement if it showed that the couple had lived together within four months after the date reflected in the jury question. *Id.* at 647. Thus, contrary to Appellants' assertion, the *Winfield* court did not construe the informal-marriage statute's "after the agreement" language

10

to mean a period not exceeding four months. *See id.* at 646–47. Rather, the four-month timeframe was based on the jury question's "on or about" language. *See id.*

The plain text of the informal-marriage statute requires only that the parties cohabitate "after the agreement" to be married. Tex. Fam. Code Ann. § 2.401(a)(2). It does not require that the parties cohabitate within any specific period of time after their marriage agreement.[6] *Id.* Because Appellants concede that the couple cohabitated beginning in 2019—after their marriage agreement—and because we have already determined that the evidence is factually sufficient to support the probate court's determination that the couple fulfilled the agreement-to-be-married requirement, the evidence factually suffices to show that Allie and Jorge lived together as husband and wife. *See Small*, 352 S.W.3d at 284 (holding evidence was sufficient to support the living-together-as-spouses element where one party conceded that the couple had lived together "during the relevant time" and the court had already determined that the evidence was sufficient to show an agreement to be married).

---

[6]As noted, Allie testified that she and Jorge lived together either at her family's house or Jorge's family's house as early as 2014. But Appellants disputed that the couple lived together before they purchased their house in June 2019 and presented evidence showing that Jorge resided at his family's home until that time. As the sole judge of the witnesses' credibility and the weight to be given their testimony, the probate court was free to resolve this conflicting evidence in Allie's favor. *See Golden Eagle Archery*, 116 S.W.3d at 761; *see also In re Est. of Walker*, No. 2-08-371-CV, 2009 WL 1996301, at *4 (Tex. App.—Fort Worth July 9, 2009, no pet.) (mem. op.). Thus, even if the parties had been required to cohabitate soon after their marriage agreement, the evidence supporting the cohabitation finding would be factually sufficient.

11

*Third*, in addition to establishing that the couple lived together as spouses after agreeing to be married, Allie was also required to establish that they represented to others in Texas that they were married. *See* Tex. Fam. Code Ann. § 2.401(a)(2). This statutory requirement is synonymous with the judicial requirement of "holding out to the public." *Garcia*, 2012 WL 3115763, at *4; *Small*, 352 S.W.3d at 284–85. "Holding out" may be established by the parties' conduct and actions; "spoken words are not necessary to establish representation as husband and wife." *Garcia*, 2012 WL 3115763, at *4 (citing *Winfield*, 821 S.W.2d at 648). Occasional introductions as husband and wife are insufficient to establish the holding-out element. *Small*, 352 S.W.3d at 285 (citing *Lee v. Lee*, 981 S.W.2d 903, 907 (Tex. App.—Houston [1st Dist.] 1998, no pet.)). "The couple's reputation in the community as being married is a significant factor in determining the holding[-]out element." *Danna v. Danna*, No. 05-05-00472-CV, 2006 WL 785621, at *1 (Tex. App.—Dallas Mar. 29, 2006, no pet.) (mem. op.) (citing *Eris*, 39 S.W.3d at 715).

Here, Allie testified that on December 26, 2013, after she and Jorge agreed to be married, she immediately told her sister and brother-in-law. She also asserted that from that day on, she referred to Jorge as her spouse and to the members of his family as her in-laws and that Jorge's family members never corrected her when she made these references in their presence.[7]

---

[7]In their briefing, Appellants assert that "there was no evidence that [Allie and Jorge] referred to themselves as spouses on any occasion before 2019." But that

Allie's longtime friend Anna Elizalde testified that Allie and Jorge "lived together for a long time"; introduced themselves as husband and wife; and called each other's parents "suegra" and "suegro," the Spanish terms for mother-in-law and father-in-law. Elizalde could not recall Jorge ever denying that he was Allie's spouse or correcting someone to say that they were just dating. She recalled that by January 2021, Allie and Jorge "were obviously always seen as being married and together."

Jose Calderon, who had met Jorge in 2012, testified that when he reconnected with Jorge in 2017, Jorge introduced Allie as his wife, and he recalled that Jorge commonly referred to Allie as his wife or his "lady." Calderon also recalled that when he socialized with Allie and Jorge, Allie would refer to Jorge as her husband and Jorge never corrected her. He also testified that Allie's dad referred to Jorge as his son-in-law. When asked, Calderon definitively stated that "there was no doubt in [his] mind" that Allie and Jorge were married.

---

assertion is clearly incorrect since Allie's testimony obviously constitutes some evidence that the couple referred to themselves as spouses as early as December 2013. But even if the parties did not satisfy the informal-marriage statute's representing-to-others requirement until 2019, that would not render the evidence factually insufficient to support the probate court's judgment. The probate court concluded merely that Allie and Jorge were married "at the time of [Jorge's] death"; it did not specifically determine that the informal marriage occurred before 2019. As we recognized above, an informal marriage does not exist until the concurrence of all three required elements. *Small*, 353 S.W.3d at 283; *accord Winfield*, 821 S.W.2d at 648 (citing *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App.—San Antonio 1987, no writ)). Logically, the obverse is also true: an informal marriage exists upon the concurrence of all three required elements—whenever that may be.

Sandra Olvera, who is related to Allie through marriage,[8] testified that "to others and [herself], . . . [Jorge] was [Allie's] husband." She also testified that Allie was clearly treated as Jorge's wife at his funeral. She recalled that Allie was seated with Jorge's family—not her own family—at the funeral and that the pamphlets provided to attendees referred to Allie as Jorge's wife. Olvera did not remember anyone's saying that the pamphlets' references to Allie as Jorge's wife were "wrong" or a "mistake." Olvera stated that "to [her], it's a fact" that Allie and Jorge were married and that she could not describe their relationship in any other way.

Erika Robles, who was Allie and Jorge's realtor and whose brother worked with Jorge, testified that when Jorge communicated with her, either in person or via text message, he referred to Allie as his wife. Examples of Jorge's text communications to Robles in which he referred to Allie as his wife were introduced into evidence.

Turning to the contrary evidence, Jorge's cousin Magda Olivas testified that Jorge introduced Allie as his girlfriend in 2014 or 2015, that neither Allie nor Jorge ever told her that they were married, and that she understood their relationship as "[j]ust boyfriend and girlfriend" even after August 2019. A number of Jorge's other family members and friends, including Mother, similarly testified that Allie had been introduced to them as Jorge's girlfriend and that they were never told that Jorge and Allie were married. In addition, the record reflects that on two separate occasions

---

[8]Olvera testified that Allie is her "sister-in-law's sister."

in 2015, Jorge referred to Allie on social media as his "girlfriend." Further, Allie acknowledged that at the hospital after Jorge's fatal accident, she did not represent to doctors or nurses that she was Jorge's wife, and the hospital records list her relationship to Jorge as "other."[9]

When, as here, the evidence is conflicting about the existence of an informal marriage, the conflict must be resolved by the factfinder. *See Est. of Walker*, 2009 WL 1996301, at *4. Applying the applicable standard of review, we conclude that the credible evidence supporting the probate court's determination that the couple represented to others that they were married was not so weak that the determination is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Pool*, 715 S.W.2d at 635.

Having determined that the evidence suffices to show that Allie and Jorge's relationship satisfied all the required informal-marriage elements, we conclude that the evidence is factually sufficient to support the probate court's finding that the couple was informally married on the date of Jorge's death. We thus overrule Appellants' first issue.

---

[9]Allie explained that she did not make it clear to hospital personnel that she was Jorge's wife because she was never asked to do so and because she was "in shock with [her] husband being deceased."

**B. Informal Marriage Date**

In their second issue, Appellants argue that the probate court erred by failing to determine the specific date on which Allie and Jorge became informally married. We disagree.

"A trial court cannot grant relief that is without pleadings to support it . . . absent trial by consent." *Westchester Fire Ins. Co. v. Nuckols*, 666 S.W.2d 372, 375 (Tex. App.—Eastland 1984, writ ref'd n.r.e.) (first citing *Oil Field Haulers Ass'n v. R.R. Comm'n*, 381 S.W.2d 183 (Tex. 1964); and then citing *Crozier v. Horne Children Maint. & Ed. Tr.*, 597 S.W.2d 418 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.)). Here, neither Allie's nor Appellants' heirship application requested that the probate court determine the specific date on which Allie and Jorge became informally married.[10] Indeed, such a determination is irrelevant to the only question that the probate court was asked to decide—who Jorge's rightful heirs are. To resolve the heirship question, the probate court needed to determine only whether Jorge was married at the time of his death. *See generally* Tex. Est. Code Ann. § 201.001–.003; *see also In re Est. of York*, 934 S.W.2d 848, 850 (Tex. App.—Corpus Christi 1996, writ denied) (recognizing that an heirship determination is made "'as of' the date and time of death" (citing *Sellers v. Powers*, 426 S.W.2d 533, 537 (Tex. 1968))). That is exactly what it did.

---

[10]Appellants do not argue that the issue was tried by consent.

Certainly, if a dispute arises about dividing Jorge's estate, the probate court might need to determine the specific date on which the informal marriage occurred, and the parties may request such relief—via appropriate pleadings—at that time. But because the parties did not request such relief in their heirship applications and because the heirship determination did not turn on the informal marriage's commencement date, the probate court did not err by declining to find the specific date on which the informal marriage began. We therefore overrule Appellants' second issue.

## III. CONCLUSION

Having overruled both of Appellants' issues, we affirm the probate court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: August 15, 2024